12-4288-cv
Doe v. Cuomo

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2013

(Argued: September 25, 2013      Decided: June 16, 2014)

Docket No. 12-4288-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

JOHN DOE,

        Plaintiff–Appellant,

           v.

ANDREW CUOMO, as Governor of the State of New
York, in his official and individual capacity, M. SEAN
BYRNE, as Acting Commissioner of the State of New
York Division of Criminal Justice Services, in his official
and individual capacity,

        Defendants–Appellees.[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: LEVAL, HALL, and LOHIER, Circuit Judges.

     John Doe appeals from a judgment of the United States District Court
for the Eastern District of New York (Amon, C.J.) granting summary
judgment in favor of defendants New York State Governor Andrew Cuomo
and Acting Commissioner of the State of New York Division of Criminal

---

[*] The Clerk of the Court is directed to amend the caption of this case as set
forth above.

Justice Services M. Sean Byrne. Doe brought an as-applied constitutional challenge to the enforcement of amendments to the notification and registration requirements of the New York State Sex Offender Registration Act ("SORA"). The amendments post-dated Doe's plea of guilty to misdemeanor attempted possession of a sexual performance by a child, for which he was classified as a level-one sex offender under SORA. We AFFIRM the judgment of the District Court.

ZACHARY A. MARGULIS-OHNUMA, New York, NY (Norman H. Siegel, Siegel, Teitelbaum & Evans LLP, New York, NY, on the brief), for Plaintiff-Appellant.

VALERIE FIGUEREDO, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Richard Dearing, Deputy Solicitor General, on the brief), for Eric T. Schneiderman, Attorney General of the State of New York, New York, NY, for Defendants-Appellees.

LOHIER, Circuit Judge:

John Doe appeals from the judgment of the United States District Court for the Eastern District of New York (Amon, C.J.) granting summary judgment in favor of the Governor of the State of New York and the Acting Commissioner of the State of New York Division of Criminal Justice Services ("DCJS") on Doe's as-applied constitutional challenges to the enforcement of certain amendments to the New York State Sex Offender Registration Act

("SORA"). The amendments we are asked to review were enacted after Doe pleaded guilty to misdemeanor attempted possession of a sexual performance by a child, as a result of which he was classified as a level-one sex offender required to register under SORA. The amendments extended the registration requirement for level-one sex offenders from ten years to a minimum of twenty years and also eliminated the ability of level-one sex offenders to petition for relief from registration. Doe argues, among other things, that requiring him to comply with these post-plea amendments violates the Ex Post Facto Clause and the Fourth Amendment, and deprives him of due process and equal protection under the Fourteenth Amendment, in violation of 42 U.S.C. § 1983. We disagree and affirm the judgment of the District Court.

**BACKGROUND**

In 1999, after he was arrested for downloading six images depicting child pornography, Doe pleaded guilty in Queens County Criminal Court to one count of attempted possession of a sexual performance by a child, a class A misdemeanor. During the plea colloquy, the State court told Doe that he could "petition [the court] as to registration, reporting requirements and

release[] relief at some future point." Doe was then sentenced principally to three years' probation and designated a level-one sex offender, which required him to register under SORA.

At the time of Doe's guilty plea, SORA required level-one sex offenders to register annually for ten years from the initial date of registration, N.Y. Correct. Law § 168-h (1996), and also provided that "[a]ny sex offender required to register pursuant to this article may be relieved of any further duty to register upon the granting of a petition for relief by the sentencing court," id. § 168-o. In 2006 the New York State Legislature amended sections 168-h and 168-o. The relevant change to § 168-h "increased the registration requirement for level one offenders from ten to twenty years . . . effective as of January 18, 2006."[1] Doe v. Pataki, 481 F.3d 69, 72 (2d Cir. 2007). Section 168-o was amended to strip out language that had given "[a]ny sex offender" an opportunity to petition the sentencing court for relief from registration, limiting the opportunity to petition for relief to level-two offenders who have

_____

[1] The amended § 168-h provides, in relevant part: "The duration of registration and verification for a sex offender who has not been designated a sexual predator, or a sexually violent offender, or a predicate sex offender, and who is classified as a level one risk, or who has not yet received a risk level classification, shall be annually for a period of twenty years from the initial date of registration." N.Y. Correct. Law § 168-h(1) (2006).

4

already been registered for thirty years. However, as amended, § 168-o also provides that, regardless of the offender's risk category, "[a]ny sex offender required to register or verify pursuant to this article may petition the sentencing court or the court which made the determination regarding the level of notification for an order modifying the level of notification." N.Y. Correct. Law § 168-o(2) (2006) (emphases added).

For a full decade, Doe complied with the conditions of his probation and his obligations under SORA. Then, in 2009, he petitioned the Queens County Criminal Court pursuant to the amended § 168-o to relieve him of his registration requirements, to strike his name from the sex offender registry maintained by DCJS, and to enjoin DCJS from publishing his identity to other government entities or the public. Doe argued that § 168-o(2) affords level-one offenders a statutory right to petition for an order adjusting their risk level downward below level one, thereby "necessarily reliev[ing] the offender from any registration requirement." Woe v. Spitzer, 571 F. Supp. 2d 382, 389 (E.D.N.Y. 2008). The criminal court denied Doe's petition on the ground that SORA, as amended, required level-one offenders like Doe to remain

registered for a minimum period of twenty years without providing any avenue for relief from registration.

As relevant to this appeal, in 2011 Doe sued the Governor and the Commissioner of DCJS in federal court under 42 U.S.C. § 1983, claiming that SORA was unconstitutional as applied to him and seeking to enjoin the enforcement of sections 168-h and 168-o against him. When the defendants moved for summary judgment, the parties agreed that there were no disputed issues of fact. Concluding that all of Doe's federal constitutional claims were meritless, the District Court granted the summary judgment motion and dismissed the lawsuit.

Doe appealed.

**DISCUSSION**

We review <u>de novo</u> the District Court's grant of summary judgment.

Doe raises three main arguments on appeal. First, he claims that the 2006 amendments to sections 168-h and 168-o as applied to him transformed SORA's registration and notification requirements into punitive measures, in violation of the Ex Post Facto Clause. Second, he argues that the State's enforcement of the amendments deprived him of procedural and substantive

due process. Third, Doe claims that the State breached its plea agreement with him, insofar as the agreement allowed him to petition for relief from SORA's registration requirement. We address each argument in turn.

A. Ex Post Facto Challenge

The ex post facto prohibition "applies only to penal statutes which disadvantage the offender affected by them." Collins v. Youngblood, 497 U.S. 37, 41 (1990). "[I]f a legislative burden is imposed 'for the purposes of punishment—that is, to reprimand the wrongdoer, to deter others, etc., it has been considered penal.'" Doe v. Pataki ("Doe I"), 120 F.3d 1263, 1273 (2d Cir. 1997) (quoting Trop v. Dulles, 356 U.S. 86, 96 (1958)). The State may not increase the punishment for a crime after it is committed. See id. at 1272. The State is free, though, to make "reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." Smith v. Doe, 538 U.S. 84, 103 (2003) (emphasis added). On occasion a law is intended to be civil or regulatory rather than punitive, but we nevertheless look to see if its effect is punitive. See id. at 97; Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168–69 (1963). "The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme:

7

has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." Smith, 538 U.S. at 97.

In Doe I, a suit brought by a different anonymous plaintiff, we considered a similar constitutional challenge to the version of SORA in effect in 1997 and held that the statute's notification and registration requirements were nonpunitive and therefore did not violate the Ex Post Facto Clause. See Doe I, 120 F.3d at 1284–85. The analysis we employed in Doe I to arrive at that conclusion was reaffirmed by the Supreme Court's decision in Smith, 538 U.S. 84, which rejected an ex post facto challenge to arguably broader notification and registration requirements imposed on sex offenders in Alaska. In urging us to distinguish our holding in Doe I, Doe argues that the 2006 amendments to sections 168-h and 168-o have, by design or in effect, transformed SORA into a punitive statute.[2]

---

[2] Doe also urges us to consider the "myriad additional burdens and restrictions on offenders" that have arisen since Doe I, including "restrictions on residency, employment and use of public facilities." As discussed infra at note 5, however, the majority of the burdens about which Doe complains stem not from SORA itself, but from local ordinances not challenged in this

## 1. Notification Provisions

Doe's first argument concerns SORA's amended notification provisions, which permit free public telephonic access to the registry and authorize law enforcement officers to disseminate information regarding level-one sex offenders to entities with vulnerable populations. We agree with the District Court that Doe failed to demonstrate that the amendment was punitive rather than regulatory or that his case is otherwise meaningfully distinguishable from Doe I. The text and structure of the amendments as well as their legislative history support our conclusion.

As an initial matter, we note that SORA's notification provisions retain the key features that we cited in Doe I as strong evidence of the Act's nonpunitive nature: (1) the calibration of notification requirements to the offender's perceived risk of re-offense; (2) the regulation of public access to and limitations on dissemination of registrant information; and (3) the protections against misuse of information. See Doe I, 120 F.3d at 1278. For example, individual callers to the registry still must provide identifying information to access the registry and are warned about the consequences of

---

lawsuit or from federal law and the laws of other States, which are not properly before us in this § 1983 action against New York State defendants.

misuse. See N.Y. Correct. Law § 168-p(1)–(2). And it remains the case that "the only affirmative dissemination that can be conducted by the state is to entities with vulnerable populations, and not to neighbors, employers, landlords, or news agencies"; even then, law enforcement officials may not reveal a level-one offender's exact address. Doe I, 120 F.3d at 1278; see 2006 N.Y. Sess. Laws ch. 106(1).[3]

The legislative history of the two amendments also strongly supports our view that the New York State Legislature's intent was nonpunitive. The Bill Jacket and accompanying materials relating to the law amending § 168-

---

[3] New York Correction Law § 168-l(6)(a) provides:

> If the risk of repeat offense is low, a level one designation shall be given to such sex offender. In such case the law enforcement agency or agencies having jurisdiction and the law enforcement agency or agencies having had jurisdiction at the time of his or her conviction shall be notified and may disseminate relevant information which may include a photograph and description of the offender and which may include the name of the sex offender, approximate address based on sex offender's zip code, background information including the offender's crime of conviction, modus of operation, type of victim targeted, the name and address of any institution of higher education at which the sex offender is enrolled, attends, is employed or resides and the description of special conditions imposed on the offender to any entity with vulnerable populations related to the nature of the offense committed by such sex offender. Any entity receiving information on a sex offender may disclose or further disseminate such information at its discretion.

l(6)(a) (the notification provision) indicate that the Legislature "authorize[ed] local police to provide information [about level-one offenders] to entities serving vulnerable populations" out of a concern for public safety. See N.Y. Bill Jacket, S.B. 8457/A.B. 8370-A, 229th Leg., 2006 Sess., ch. 106, at 8–9 (2006). Likewise, the legislative history of the 2004 law amending § 168-p to remove the fee for accessing the registry indicates that the Legislature sought to reduce child sexual abuse by facilitating registry checks by youth organizations rather than to punish offenders. See N.Y. Bill Jacket, S.B. 7552/A.B. 11590, 227th Leg., 2004 Sess., ch. 361, at 3–5 (2004).

The legislative purpose of the amendments aside, we also reject Doe's argument that the notification provisions are "punitive in fact." See Doe I, 120 F.3d at 1278. The most significant adverse effects of notification, as in Doe I, "(1) are wholly dependent on acts by private third parties, (2) result from information most of which was publicly available prior to the SORA, and (3) flow essentially from the fact of the underlying conviction." Id. at 1280. Again, this case is not materially different from Doe I, in which we pointed out that "[g]enerally, a statutory scheme that serves a regulatory purpose 'is not punishment even though it may bear harshly on one

11

affected.'" Id. at 1279 (quoting Flemming v. Nestor, 363 U.S. 603, 614 (1960)).

Here, the telephonic notification system is "a passive one: An individual must seek access to the information." Smith, 538 U.S. at 105; see also N.Y. Correct. Law § 168-p. Although the statute permits law enforcement officers to provide level-one registrant information to those working with vulnerable populations, that is a far cry from posting the information on the Internet for all to see—a practice that the Supreme Court held was nonpunitive in Smith. See Smith, 538 U.S. at 99.

Finally, to the extent that Doe argues that the notification procedures promote the aims of punishment and are excessive in relation to their regulatory purpose, that argument, too, is foreclosed by Doe I. We have expressly recognized that the legislature's legitimate regulatory aims include the dissemination of information about offenders to communities with vulnerable populations. Doe I, 120 F.3d at 1281–82; see also Smith, 538 U.S. at 103–05.[4] And as for excessiveness, the amendments did not sufficiently alter the burdens of the notification requirements to call for reassessment of the question.

---

[4] Doe's remaining arguments that the amended notification provisions render the Act punitive are also foreclosed by our decision in Doe I.

12

## 2. Registration Provisions

We are similarly unpersuaded by Doe's efforts to characterize SORA's registration provisions as punitive. Initially, "the legislature enacted the registration provisions primarily to serve the nonpunitive purpose of enhancing future law enforcement efforts." Doe I, 120 F.3d at 1285. "[B]ecause registration is the necessary prerequisite for community notification, registration also serves the general goal of protecting members of the public from the potential dangers posed by convicted sex offenders." Id. In upholding the Act's original registration provision as nonpunitive, we emphasized that the duration, form, and frequency of registration were calibrated to the offender's risk classification. Id. Although the registration periods are longer under the 2006 amendments to SORA, the amendments reflect the same calibration of registration burdens to risk classification that we found persuasive in Doe I, see N.Y. Bill Jacket, S.B. 6409/A.B. 9472, 229th Leg., 2006 Sess., ch.1, at 3–4 (2006), and accordingly we see no reason to revisit our decision in Doe I on this issue.

To distinguish Doe I, Doe points to the amended Act's triennial requirement that a level-one offender report to be photographed and

fingerprinted rather than renew his registration in writing. See N.Y. Correct. Law § 168-f(2)(b-3). But "the Supreme Court has consistently upheld [against ex post facto challenges the] . . . termination of financial support[] and loss of livelihood," both of which, it seems to us, represent "far heavier burdens" than this triennial, in-person reporting requirement. Doe I, 120 F.3d at 1285.

Nor is our analysis swayed by the Act's extension of registration from ten to twenty years or its elimination of the right to petition for relief. In Doe I we viewed the ability of sex offenders to petition for discretionary relief from registration under § 168-o as a factor—but only one—evidencing that the notification requirements of SORA were "reasonably related to the nonpunitive, prospective goals of protecting the public and facilitating law enforcement efforts." Doe I, 120 F.3d at 1281–82, 1284–85. Still, the State Legislature's later decision to eliminate the possibility of relief from registration for twenty years does not invalidate our original assessment in Doe I that the registration provisions are nonpunitive. Instead, it reflects a reasonable legislative judgment, developed since SORA's enactment, that the regulatory aims of protecting public safety and facilitating law enforcement

14

are better served by ensuring that all level-one offenders remain registered for twenty rather than ten years.

B. Procedural Due Process Challenge

Pointing to a "protected liberty interest" in the terms of his plea agreement, which memorialized the then-applicable ten-year registration requirement and possibility of petitioning for relief from registration, Doe next argues that the 2006 amendments violate his procedural due process rights. On appeal as in his complaint, Doe asserts that he was deprived of procedural due process "when he was denied his petition for modification of his registration requirements without a hearing or other opportunity to show that he was not a danger to the community." Joint App'x 30.

Although Doe contends that the State did not afford constitutionally adequate procedures in applying SORA to him, there was no fact that would require a protective procedure to determine. New York State has concluded—as it was constitutionally entitled to do—that the mere fact of conviction of certain sex offenses justifies the imposition of SORA's registration, notification, and other restrictions. Doe does not challenge the procedure by which New York State so legislated. Nor does he challenge the

15

procedure by which New York State convicted him of a relevant offense. He also does not challenge the procedure by which New York State determined that he was a level-one (low-risk) offender. And he does not suggest that he was not convicted of a relevant offense, in which case an inquiry into his criminal history might be required. All of the facts necessary to conclude that SORA restrictions apply to Doe are therefore known and unchallenged. There is no inquiry left to be made and no reason to require elaborate procedures to make it.

Notwithstanding the absence of any statutorily relevant facts in dispute, Doe makes two procedural due process arguments. First, he contends that he is entitled to due process in the determination whether he is sufficiently dangerous to justify subjecting him to SORA and its amendments. But whether Doe is actually dangerous is irrelevant under SORA. In Connecticut Department of Public Safety v. Doe, 538 U.S. 1 (2003), the Supreme Court rejected this argument in a challenge to the Connecticut analog to SORA. See id. at 4 ("[D]ue process does not require the opportunity to prove a fact that is not material to the State's statutory scheme.") Here, the New York State Legislature decided that a conviction for a relevant offense

16

was proof enough of dangerousness. If Doe happens to fall within the subset of convicted sex offenders who are not actually dangerous, it is the consequence of imperfectly tailored legislative line-drawing. But because it is not constitutionally suspect to distinguish between people who have been convicted of sex offenses and people who have not, such line-drawing is reviewed deferentially under rational basis scrutiny. There is clearly a rational basis for the line New York chose to draw.

Doe also argues that he was deprived of due process when, as he asserted in his complaint, "despite the sentencing court's promise to him, the Legislature amended the law to abolish the petition for relief from registration." Joint App'x 30. We are no more persuaded by this second argument than we were by the first. There is no serious dispute that the New York State Legislature "provide[d] constitutionally adequate process simply by enacting [the SORA amendments], publishing [them], and . . . affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements." United States v. Locke, 471 U.S. 84, 108 (1985).

17

We therefore conclude that the District Court properly dismissed Doe's procedural due process claim.

C. Substantive Due Process Challenge

Next, Doe argues that the District Court erred in holding that he lacked standing to mount a substantive due process challenge to those SORA provisions he contends infringed his rights to privacy and to travel. We see no error. Even assuming, without deciding, that the SORA provisions precluding registered offenders from obtaining insurance coverage or health benefits for erectile dysfunction implicate Doe's privacy rights in intimate affairs, Doe failed to allege any injury as a result of those provisions, and no injury may reasonably be inferred. Nor did Doe allege that SORA prevented him from changing residence, obtaining employment, or using public facilities in violation of his right to travel.[5]

---

[5] SORA prohibits Doe from working on an ice cream truck. See N.Y. Correct. Law § 168-v. As the District Court observed, Doe neither alleges that he previously worked on an ice cream truck nor expresses any desire to do so. Except for the bar against working on an ice cream truck, the residency, employment, travel, and public facility use restrictions about which Doe complains are imposed by local ordinances, which are not before us. Likewise, the burdens on interstate travel about which Doe complains arise from federal law and the statutes of other States, not SORA.

18

Doe's remaining substantive due process challenge is that, as they apply to him, SORA's reporting and notification requirements violate his right to privacy of personal information, a right he describes as fundamental. In Doe I, we observed that much of the information about a sex offender's identity was publicly available even before SORA was enacted. Doe I, 120 F.3d at 1280. Given the combination of the nature of the information released (consisting in large part of matters of public record) and the State's strong interest in releasing it, Doe has not supported a claim for the violation of any constitutional right to privacy. Cf. Paul v. Davis, 424 U.S. 693, 713 (1976).[6] Nor, as already discussed, is there any real question that SORA's requirements are rationally related to the aim of protecting public safety. Accordingly, we affirm the District Court's dismissal of Doe's substantive due process claims.

D. Doe's Plea Agreement

We turn next to Doe's argument on appeal that the State's retroactive application of the 2006 SORA amendments violated the terms of his 1999 plea

---

[6] Although some information (for example, Doe's zip code or affiliation with a school) may not be public, Doe's complaint failed to allege that this specific personal information—unlike the fact of his registration as a sex offender—had been or was likely to be accessed by members of the public or circulated by law enforcement.

19

agreement. This argument rests on Doe's allegation that the State court judge who presided over his plea hearing promised him that he would have the ability to petition for relief from registration and would be required to register only for a ten-year period. More specifically, Doe's complaint alleged that, "[j]ust prior to entering the plea, Doe was assured by the court that he would be permitted to petition for release from registration as the statute explicitly permitted at that time." Joint App'x 6–7. However, we do not construe the State court's comment during the plea and sentencing proceedings that it would "allow [Doe] to petition [the court] as to registration, reporting requirements and release[ ] relief at some future point" as a representation that SORA would never be amended. See Joint App'x 52–53. We therefore affirm the dismissal of Doe's breach-of-plea claim.

E. Equal Protection and Fourth Amendment Challenges

A self-described "demonstrably non-dangerous offender," Doe also contends that his continued inclusion in the New York sex offender registry beyond ten years violates his right to equal protection because it is not rationally related to the Act's aims of protecting the public. As we conclude

20

that the amendments withstand rational basis review, we reject this argument.

Lastly, Doe argues that the registration requirements violate his Fourth Amendment right to be free from unreasonable searches and seizures. Even if we assume for argument that SORA's requirements subject Doe to a search or seizure for Fourth Amendment purposes, we cannot agree that any such search or seizure is unreasonable. Here, any searches or seizures required by SORA serve special needs—such as the protection of potential future victims and the solving of crimes in the future—and purport neither to facilitate the investigation of any specific crime nor primarily to serve a "general interest in crime control." See Nicholas v. Goord, 430 F.3d 652, 663, 669 (2d Cir. 2005); Roe v. Marcotte, 193 F.3d 72, 79 (2d Cir. 1999). Moreover, the degree of intrusion on convicted sex offenders is reasonable in relation to the interests advanced by SORA. See Illinois v. Lidster, 540 U.S. 419, 425–26 (2004). We therefore conclude that SORA, as amended and as applied to Doe, does not run afoul of the Fourth Amendment.

## CONCLUSION

We have considered Doe's remaining arguments and conclude that they are without merit.  For the foregoing reasons, we AFFIRM the judgment of the District Court.