# IN THE SUPREME COURT OF IOWA

No. 18–1045

Filed April 5, 2019

**STATE OF IOWA,**

Appellee,

vs.

**LLOYD ASCHBRENNER,**

Appellant.

---

Appeal from the Iowa District Court for Linn County, Mitchell E. Turner, Judge.

Defendant appeals conviction for violating Internet identifier reporting requirement of Iowa's sex offender registration statute. **AFFIRMED.**

Philip B. Mears of Mears Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, Louis S. Sloven, Assistant Attorney General, Jerry Vander Sanden, County Attorney, and Rena Schulte, Assistant County Attorney, for appellee.

**WATERMAN, Justice.**

The legislature periodically updates statutes to keep pace with technology. Convicted sex offenders have long been required to report and update their resident addresses with the local sheriff. The sex offender registry alerts neighbors, especially those with children, of sex offenders and helps law enforcement track them. In this appeal, an adult registered sex offender presents constitutional challenges to his conviction for violating a more recent statutory requirement that he report his "Internet identifiers" (such as names used on social media).

In 2007, the offender pleaded guilty to lascivious acts with a child and was placed on the sex offender registry pursuant to Iowa Code chapter 692A (2007). The legislature's 2009 amendment to that statute added the requirement that the offender disclose his Internet identifiers to the local sheriff and update the sheriff with any subsequent changes. The law is intended to prevent or detect a sex offender's use of Internet communications to lure new victims.

In 2017, the offender was charged with failing to report his Internet identifier for a Facebook account he was using under an assumed name. He argued that the statute, as applied to him, violated the Free Speech and Ex Post Facto Clauses in the Federal and State Constitutions. The district court declined to depart from our precedent, holding that sex offender registration requirements are not punitive, and rejected his ex post facto and free speech challenges. He appealed his resulting conviction, and his appellate briefing relies in part on our decision in *In re T.H.*, 913 N.W.2d 578 (Iowa 2018) (holding that sex offender registration requirements for a *juvenile* offender were punitive). We retained his appeal.

On our review, we hold *In re T.H.* applies only to juvenile offenders and the district court correctly rejected the ex post facto challenge. Applying intermediate scrutiny, we hold the Internet identifier reporting requirement is content neutral, serves a significant state interest, is narrowly tailored, and therefore withstands challenge under the First Amendment and article I, section 7 of the Iowa Constitution. The statute allows the offender to use social media without requiring disclosure of passwords, the offender can update his Internet identifiers with the sheriff by phone or email within five business days, and similar Internet identifier reporting requirements have been upheld by other courts. Accordingly, we affirm the district court judgment.

## I. Background Facts and Proceedings.

In 2007, Lloyd Aschbrenner, then age thirty-seven, pleaded guilty to one count of lascivious acts with a child in violation of Iowa Code section 709.8(3) (2007), a class "D" felony, after he molested his thirteen-year-old stepdaughter. The district court sentenced Aschbrenner to a five-year suspended prison sentence, supervised probation, and a ten-year special sentence requiring him to register as a sex offender. In 2008 and 2014, Aschbrenner was convicted of sex offender registry violations, each treated as a first offense, in Benton County and Linn County, respectively. As a result of his 2014 conviction, his registration requirement was extended another ten years. *Id.* § 692A.106(4) (2014).

Under the sex offender registration statute in force when Aschbrenner was convicted and sentenced in 2007, he was required to provide the sheriff with his name, address, and telephone number. Iowa Code § 692A.3 (2007). He was obligated to report any changes. *Id.* In 2009, the legislature rewrote and renumbered chapter 692A, significantly amending the statute. 2009 Iowa Acts ch. 119, div. I (codified as

amended at Iowa Code ch. 692A (2011)). One of the amendments changed the amount of information an offender was required to provide to the sheriff:

> A sex offender shall appear in person to register with the sheriff of each county where the offender has a residence, maintains employment, or is in attendance as a student, within five business days of being required to register under section 692A.103 by providing all relevant information to the sheriff.

Iowa Code § 692A.104(1). Chapter 692A defines "relevant information" to include twenty-one categories. *Id.* § 692A.101(23)(*a*). The one at issue here is "Internet identifier," defined as

> an electronic mail address, instant message address or identifier, or any other designation or moniker used for self-identification during internet communication or posting, including all designations used for the purpose of routing or self-identification in internet communications or postings.

*Id.* § 692A.101(15). The statute does not prohibit the offender from using the Internet and does not require the offender to provide the sheriff with any passwords. *See* Iowa Code ch. 692A.

The offender is required to update the sheriff within five days of any changes in his or her Internet identifiers but need not report in person. *Id.* § 692A.104(3). The legislature authorized the Iowa Department of Public Safety (DPS) to promulgate rules implementing the reporting requirements. *Id.* The DPS issued a rule allowing offenders to update "any item of relevant information other than changes of address, places of attendance as a student, or places of employment . . . in person, by telephone, or electronically, within five days of the change occurring." Iowa Admin. Code r. 661—83.3(4) (2009).

A member of the public may contact the sheriff's office to inquire about "relevant information from the registry regarding a specific sex

offender," including whether a particular Internet identifier belongs to a registered sex offender. *Id.* § 692A.121(5)(*a*). But "[s]ex offender registry records are confidential records not subject to examination and copying by a member of the public and shall only be released as provided in this section." *Id.* § 692A.121(14).

On April 24, 2017, the Iowa Division of Criminal Investigation (DCI) received an anonymous tip through the sex offender registry website that Aschbrenner had a Facebook profile under the name "Cyrus Templar." Although Aschbrenner had reported an email address to the sheriff, he had not reported his Facebook account.

DCI agents investigated the tip and obtained records from Mediacom and Facebook showing two IP addresses linked to the Facebook account: one belonging to Aschbrenner's former employer and another belonging to the woman who owned the residence where Aschbrenner resided. The DCI also looked at Cyrus Templar's Facebook page. The page showed he was a member of a band called Lipstick Slick, which frequently performed at bars as well as at festivals minors attend. A DCI agent and a Linn County sheriff's deputy spoke to Aschbrenner's former employer, who identified Aschbrenner from a photo on Lipstick Slick's Facebook page. The investigators also spoke to a band member who told them Aschbrenner, who she knew as "Buddy," had been playing in the band since February 2017. When investigators interviewed Aschbrenner, he admitted the Cyrus Templar Facebook page was his and that he had failed to report it to the sheriff.

In August 2017, Aschbrenner was charged by trial information with a sex offender registry violation, second or subsequent offense, in violation of Iowa Code sections 692A.103, .104, and .111 for "fail[ing] to

provide all 'relevant information' concerning his internet identities to the Linn County Sheriff's Department as required by law."

Aschbrenner filed a motion to dismiss, arguing the Internet identifier-reporting requirement violates the prohibitions on ex post facto punishment and the freedom of speech guarantees in the United States and Iowa Constitutions. The State resisted. The district court denied the motion.

The parties stipulated to a bench trial on the minutes of testimony. Aschbrenner was found guilty as charged. The district court imposed a five-year suspended sentence, two years of supervised probation, and a $750 fine. Aschbrenner appealed, asserting the same constitutional challenges to the Internet identifier-reporting requirement. We retained his appeal.

## II. Scope of Review.

Our standard of review for rulings on constitutional challenges to a sex offender registration statute is de novo. *See In re T.H.*, 913 N.W.2d at 582.

> [W]e must remember that statutes are cloaked with a presumption of constitutionality. The challenger bears a heavy burden, because [he] must prove the unconstitutionality beyond a reasonable doubt. Moreover, "the challenger must refute every reasonable basis upon which the statute could be found to be constitutional." Furthermore, if the statute is capable of being construed in more than one manner, one of which is constitutional, we must adopt that construction.

*State v. Seering*, 701 N.W.2d 655, 661 (Iowa 2005) (quoting *State v. Hernandez-Lopez*, 639 N.W.2d 226, 233 (Iowa 2002)), *superseded by statute on other grounds by In re T.H.*, 913 N.W.2d at 588.

### III. Analysis.

Aschbrenner argues the amendment enacted after his conviction that expanded the relevant information he is required to provide to the sheriff to include Internet identifiers violates the prohibitions against ex post facto punishment and the freedom of speech guarantees in the United States and Iowa Constitutions. To provide context for his challenges, we begin our analysis with the genesis of the statutory requirements.

In the early 1990s, after seven-year-old Megan Kanka was raped and murdered by a neighbor who, unbeknownst to Megan's parents, was a convicted sex offender, states began enacting sex offender registration and community notification statutes. *Nichols v. United States*, 578 U.S. ___, ___, 136 S. Ct. 1113, 1116 (2016); *Smith v. Doe*, 538 U.S. 84, 89–90, 123 S. Ct. 1140, 1145 (2003). In 1994, Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, Pub. L. No. 103-322, 108 Stat. 2038 (1994) (codified at 42 U.S.C. § 14071 (1994)), "condition[ing] federal funds on States' enacting sex-offender registry laws meeting certain minimum standards." *Nichols*, 578 U.S. at ___, 136 S. Ct. at 1116. "In 2006, Congress replaced the Wetterling Act with the Sex Offender Registration and Notification Act (SORNA)," Title I of the Adam Walsh Child Protection and Safety Act of 2006. *Id.*

> Congress enacted the Adam Walsh Child Protection and Safety Act of 2006 to "protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, *to promote Internet safety*, and to honor the memory of Adam Walsh and other child crime victims."

*United States v. Searcy*, 880 F.3d 116, 119 (4th Cir. 2018) (emphasis added) (quoting Adam Walsh Child Protection and Safety Act of 2006,

Pub. L. No. 109–248, 120 Stat 587).  The 2009 amendment to Iowa Code chapter 692A "was intended to more closely conform Iowa's sex offender registry law to" SORNA.  *Maxwell v. Iowa Dep't of Pub. Safety*, 903 N.W.2d 179, 185 n.4 (Iowa 2017).

The idea behind sex offender registration and notification systems is to alert people to the criminal history of sex offenders living nearby so that precautions may be taken and to enable law enforcement to track sex offenders.  Parents presumably would limit their child's contact with a neighbor on the sex offender registry.  Similarly, parents monitoring their child's suspicious Internet communications could report the sender's Internet identifier to the sheriff to determine whether the sender is on the registry.

Mindful of the legislative purpose to protect the public, we turn to Aschbrenner's ex post facto and freedom of speech challenges to chapter 692A.  We address each challenge in turn.

### A.  Prohibitions on Ex Post Facto Punishment.

> The [E]x [P]ost [F]acto [C]lauses of the [F]ederal and [S]tate [C]onstitutions forbid enactment of laws that impose punishment for an act that was not punishable when committed or that increases the quantum of punishment provided for the crime when it was committed.

*State v. Pickens*, 558 N.W.2d 396, 397 (Iowa 1997); *see also* U.S. Const. art. I, § 10, cl. 1 ("No State shall . . . pass any . . . ex post facto Law, . . . ."); Iowa Const. art. I, § 21 ("No . . . ex post facto law . . . shall ever be passed.").

"The ex post facto prohibition extends only to 'cases criminal in nature . . . even where the civil consequences are "serious" in nature.' " *Seering*, 701 N.W.2d at 667 (alteration in original) (quoting *Hills v. Iowa Dep't of Transp. & Motor Vehicle Div.*, 534 N.W.2d 640, 641 (Iowa 1995)).

For that reason, "[p]urely civil penalties . . . are not subjected to such restrictions." *Id.* (alteration in original) (quoting *State v. Corwin*, 616 N.W.2d 600, 601 (Iowa 2000) (en banc)). "If the law was intended to be civil and nonpunitive, then we look to see if it is nevertheless 'so punitive either in purpose or effect as to negate' the nonpunitive intent." *Id.* (quoting *Smith*, 538 U.S. at 92, 123 S. Ct. at 1147).

> [T]he mark of an ex post facto law is the imposition of what can fairly be designated punishment for past acts. The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation . . . .

*Pickens*, 558 N.W.2d at 398 (quoting *De Veau v. Braisted*, 363 U.S. 144, 160, 80 S. Ct. 1146, 1155 (1960)).

We have adopted the test established in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S. Ct. 554 (1963), to determine whether a statute is sufficiently punitive to constitute a prohibited ex post facto law. We consider the following factors:

> [1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment-retribution or deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned.

*Pickens*, 558 N.W.2d at 398–99 (quoting *Mendoza-Martinez*, 372 U.S. at 168–69, 83 S. Ct. at 567–68).

We have applied the *Mendoza-Martinez* test to our sex offender registration statute several times. After analyzing the seven factors, we

held that "Iowa's sex offender registration statute, Iowa Code chapter 692A, is not punitive and therefore is not ex post facto." *Pickens*, 558 N.W.2d at 400. This is because "the purpose of the registry is protection of the health and safety of individuals, and particularly children, from individuals who, by virtue of probation, parole, or other release, have been given access to members of the public." *State v. Iowa Dist. Ct.*, 843 N.W.2d 76, 81 (Iowa 2014); *see also State v. Graham*, 897 N.W.2d 476, 487–91 (Iowa 2017) (rejecting claim that a lifetime sex offender registration requirement constituted cruel and unusual punishment); *Seering*, 701 N.W.2d at 668–69 (concluding that the sex offender registration statute's residency restriction did not violate prohibitions on ex post facto punishment).

Last year, however, we held "that mandatory sex offender registration for juvenile offenders is sufficiently punitive to amount to imposing criminal punishment." *In re T.H.*, 913 N.W.2d at 596.[1] Aschbrenner argues that based on our holding in *In re T.H.*, we should find the sex offender registration requirements "sufficiently punitive to render the scheme penal in nature" with regard to adult offenders. *Id.* at 588.

When considering the *Mendoza-Martinez* factors in *In re T.H.*, we concluded,

> The statute imposes an affirmative restraint akin to supervised probation. It mandates the mass dissemination of offender records that are historically kept confidential to

---

[1]Three justices dissented in part in *In re T.H.*, and would have held that Iowa's sex offender registration statute was not punitive as applied either to juvenile or adult offenders. 913 N.W.2d at 607 (Mansfield, J., concurring in part and dissenting in part) ("We have held that Iowa's sex offender registration laws do not constitute punishment under either the United States or the Iowa Constitutions. . . . I do not agree that registration which is nonpunitive for adults becomes punitive when applied in a more lenient way to juveniles.").

> promote the juvenile's potential for rehabilitation. And the sheer number of restrictions imposed on juveniles, given the demonstrated low juvenile recidivism rate, is excessive in light of the civil purpose of preventing multiple offenses.

*Id.* at 596. We focused on factors unique to juveniles—the confidentiality of juvenile adjudications, their lower recidivism rates, and the impact of school exclusion zones on the child offender's ability to reintegrate with peer groups. *Id.* at 588–97.

*In re T.H.* is readily distinguishable based on the unique concerns of juvenile offenders that are inapplicable to adult offenders. Adult offenders are better able to meaningfully reintegrate into the community and interact with their peer groups notwithstanding the restrictions in the sex offender registration statute, such as avoiding schools and school events—restrictions that we concluded were punitive as applied to juveniles. Additionally, an adult offender's criminal conviction is already a matter of public record, unlike juvenile adjudications, which are sealed unless the juvenile's case is transferred to adult criminal court. Adults also have higher recidivism rates.

Our 2005 decision in *Seering* remains good law as to adult sex offenders. *See In re T.H.*, 913 N.W.2d at 596 (holding Iowa's sex offender registration statute punitive only as to juvenile offenders); *Formaro v. Polk County*, 773 N.W.2d 834, 843–44 (Iowa 2009) (relying on *Seering* to hold that Iowa's sex offender registration statute's 2000-foot rule did not violate the ex post facto prohibitions in the United States and Iowa Constitutions). *Seering* relied on the United States Supreme Court's decision in *Smith v. Doe*, 538 U.S. 84, 123 S. Ct. 1140 (2003), which held that Alaska's sex offender registration statute was nonpunitive. *Seering*, 701 N.W.2d at 665–69.

Since we decided *Seering,* every circuit of the United States Court of Appeals has concluded that sex offender registration statutes are nonpunitive.[2] Moreover, many state supreme courts and courts of appeal have reached the same conclusion since 2005.[3] We decline to

---

[2]*See Shaw v. Patton,* 823 F.3d 556, 577 (10th Cir. 2016) (holding Oklahoma's sex offender registration statute was not punitive); *Doe v. Cuomo,* 755 F.3d 105, 111–12 (2d Cir. 2014) (holding that the federal sex offender registration statute was not punitive); *United States v. Elk Shoulder,* 738 F.3d 948, 954 (9th Cir. 2013) (same); *United States v. Under Seal,* 709 F.3d 257, 266 (4th Cir. 2013) (same); *United States v. Parks,* 698 F.3d 1, 5–7 (1st Cir. 2012) (same); *United States v. Felts,* 674 F.3d 599, 606 (6th Cir. 2012) (same); *United States v. W.B.H.,* 664 F.3d 848, 859–60 (11th Cir. 2011) (same); *Anderson v. Holder,* 647 F.3d 1165, 1169–73 (D.C. Cir. 2011) (holding the District of Columbia's sex offender registration statute was not punitive); *United States v. Leach,* 639 F.3d 769, 773 (7th Cir. 2011) (holding the federal registration statute was not punitive); *United States v. Shenandoah,* 595 F.3d 151, 158–59 (3d Cir. 2010) (finding SORNA did not implicate the Ex Post Facto Clause), *abrogated on other grounds by Reynolds v. United States,* 565 U.S. 432, 445–46, 132 S. Ct. 975, 984 (2012); *United States v. Young,* 585 F.3d 199, 204–06 (5th Cir. 2009) (holding federal registration statute nonpunitive); *United States v. May,* 535 F.3d 912, 919–20 (8th Cir. 2008) (same), *abrogated on other grounds by Reynolds,* 565 U.S at 445–46, 132 S. Ct. at 984.

[3]*See In re J.C.,* 221 Cal. Rptr. 3d 579, 591 (Cal. Ct. App. 2017) (holding juvenile sex offender registration was not punishment because the offender "failed to show the limited degree of public disclosure applicable to juveniles required to register . . . is sufficiently burdensome to distinguish it from that applicable to adult offenders"); *In re J.O.,* 383 P.3d 69, 75 (Colo. App. 2015) (holding sex offender registration as applied to juveniles was not punishment); *State v. Zerbe,* 50 N.E.3d 368, 371 (Ind. 2016) (concluding that applying the sex offender registration statute to an offender who committed his offense prior to the enactment of the registration statute was not ex post facto punishment); *State v. Reed,* 399 P.3d 865, 904 (Kan. 2017) ("Registration pursuant to [the Kansas registration statute] for sex offenders is not punishment."); *People v. Tucker,* 879 N.W.2d 906, 925–26 (Mich. Ct. App. 2015) (concluding that the recapture, student safety zones, and in-person reporting requirements of Michigan's sex offender registration statute did not constitute punishment); *State v. LaFountain,* 901 N.W.2d 441, 450 (Minn. Ct. App. 2017) (concluding that Minnesota's sex offender registration statute was not punitive and did not compel offenders to incriminate themselves in violation of the Fifth Amendment); *Doe v. Phillips,* 194 S.W.3d 833, 842 (Mo. 2006) (en banc) (concluding that Missouri's sex offender registration statute did not violate state or federal ex post facto prohibitions, but one aspect did violate Missouri's prohibition on laws "retrospective in operation"); *State v. Boche,* 885 N.W.2d 523, 538–39 (Neb. 2016) (concluding that Nebraska's sex offender registration requirements did not constitute punishment); *State v. Eighth Judicial Dist. Ct.,* 306 P.3d 369, 388 (Nev. 2013) (holding retroactive application of the sex offender registration statute to certain juveniles did not violate prohibitions on ex post facto punishment); *State v. Meador,* 785 N.W.2d 886, 889–90 (N.D. 2010) (holding that the retroactive application of sexual offender registration requirements to an offender whose conviction for a sexual offense occurred before enactment of the registration requirements did not violate the constitutional prohibition of ex post facto laws because the registration

overrule *Seering* as to adult offenders. *See Book v. Doublestar Dongfeng Tyre Co.*, 860 N.W.2d 576, 594 (Iowa 2015) ("Stare decisis alone dictates continued adherence to our precedent absent a compelling reason to change the law."). The statute as applied to Aschbrenner is nonpunitive.

In *Doe v. Shurtleff*, the United States Court of Appeals for the Tenth Circuit rejected a constitutional challenge to Utah's Internet identifier requirement similar to Iowa's holding that Utah's Internet identifier reporting requirement did not constitute punishment triggering ex post facto prohibitions. 628 F.3d 1217, 1227 (10th Cir. 2010).

When considering Aschbrenner's motion to dismiss the sex offender registration violation charge, the district court aptly noted,

> With the internet having so affected our daily lives, the Court agrees with Plaintiff's assertion that providing information regarding a person's internet identifier is no different than providing an address or telephone number. The goal of the statute at issue in this case is public safety, and having information regarding the internet presence of an individual on the sex offender registry enables law enforcement to maintain data in the same way it does when it comes to the individual's address or telephone number; just as the location of an individual's residence may impact the risk to reoffend, so too does an individual's internet presence.

We agree. The legislature reasonably could update the sex offender registration requirements in response to the exponential increases in use of social media. Just as disclosure of a sex offender's street address alerts neighbors with children who might interact with the offender, the disclosure of the names an offender uses on social media helps protect

---

requirements were remedial and nonpunitive); *Vaughn v. State*, 391 P.3d 1086, 1100 (Wyo. 2017) (holding that applying Wyoming's sex offender registration statute to juveniles did not violate ex post facto prohibitions); *Kammerer v. State*, 322 P.3d 827, 839–40 (Wyo. 2014) (holding that Wyoming's sex offender registration statute did not violate federal or state ex post facto prohibitions).

the public from the risks of anonymous postings or electronic communications trolling for victims.

For all of these reasons, we reject Aschbrenner's ex post facto challenges under the Iowa and Federal Constitutions.

**B. Freedom of Speech Guarantees.** Aschbrenner argues that the sex offender registration statute's Internet identifier reporting requirement unconstitutionally infringes on his right to freedom of speech under the Federal and Iowa Constitutions.[4] "A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more." *Packingham v. North Carolina*, 582 U.S. ___, ___, 137 S. Ct. 1730, 1735 (2017). Today, one of the most important forums for people to share ideas is the Internet, particularly social media. Our court is not the first to adjudicate a sex offender's constitutional challenges to social media restrictions or disclosure requirements.

1. *Other jurisdictions.* Various federal courts have considered whether sex offender statutes with various reporting requirements related to Internet use violated the offender's First Amendment rights. In *Packingham*, the United States Supreme Court invalidated a North Carolina statute that made it a felony for sex offenders to access any social media website "where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages." 582 U.S. at ___, 137 S. Ct. at 1733–38; *see also Doe v. Nebraska*, 898 F. Supp. 2d 1086, 1107–22 (D. Neb. 2012) (finding Nebraska's sex offender registration statute that banned offenders from

---

[4]U.S. Const. amend. I ("Congress shall make no law . . . abridging the freedom of speech . . . ."); Iowa Const. art. I, § 7 ("No law shall be passed to restrain or abridge the liberty of speech, or of the press.").

using social networking sites violated the First Amendment). However, the Supreme Court noted,

> [I]t can be assumed that the First Amendment permits a State to enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information about a minor."

*Packingham*, 582 U.S. at ___, 137 S. Ct. at 1737.

Packingham involved a total ban on social media use. Meanwhile, other state and federal courts have upheld sex offender Internet identifier reporting requirements. *See People v. Minnis*, 67 N.E.3d 272, 291 (Ill. 2016) (holding that Illinois's Internet identifier disclosure requirement did not violate the First Amendment); *Harris v. State*, 985 N.E.2d 767, 775–76 (Ind. Ct. App. 2013) (holding that an Indiana statute requiring offender to report "[a]ny electronic mail address, instant messaging username, electronic chat room username, or social networking web site username that the sex or violent offender uses or intends to use" did not violate the First Amendment (footnote omitted) (quoting Ind. Code § 11-8-8-8(a)(7) (2013))); *Coppolino v. Noonan*, 102 A.3d 1254, 1284–85 (Pa. Commw. Ct. 2014) (concluding that a registration statute limiting disclosure of Internet identifiers to law enforcement, victims, and community members living near sexually violent predators did not violate the First Amendment); *Ex parte Odom*, ___ S.W.3d ___, No. 01-18-00169-CR, 2018 WL 6694790, at *10 (Tex. Ct. App. Dec. 20, 2018); *Shurtleff*, 628 F.3d at 1225–26 (holding Utah's Internet identifier reporting requirement did not violate the First Amendment). In *Odom*, the Texas Court of Appeals rejected a First Amendment challenge to a sex offender Internet identifier-reporting requirement similar to Iowa's. The *Odom* court noted that "sex offender registration statutes enacted in at least

eight states have been held to be content-neutral regulations subject to intermediate scrutiny." *Odom,* at \*5; *see also id.* at n.1 (collecting cases).

More stringent restrictions, however, have been found unconstitutional. In *Doe v. Harris,* the United States Court of Appeals for the Ninth Circuit struck down a California statute that required sex offenders subject to the state's registration requirements to report Internet identifiers and Internet service providers and to provide written notice of any changes to law enforcement within twenty-four hours of the change. 772 F.3d 563, 568 (9th Cir. 2014). The court found the statute was content neutral and applied intermediate scrutiny. *Id.* at 575. The court determined that while the statute served a significant government interest, it "unnecessarily chill[ed] protected speech in at least three ways." *Id.* at 577–78. The court concluded that the statute chilled protected speech because it "does not make clear what sex offenders are required to report, there are insufficient safeguards preventing the public release of the information sex offenders do report, and the 24-hour reporting requirement is onerous and overbroad." *Id.* at 578. We conclude *Harris* is distinguishable. The Iowa statute not only allows an additional four business days to report Internet identifiers, but also provides more clarity and more limited public disclosure than in *Harris,* as explained below. The weight of authority supports the State's position here.

2. *Iowa's Internet identifier reporting requirement.* Aschbrenner and the State agree that Iowa's sex offender registry statute is content neutral. Aschbrenner has not presented any evidence that the Internet identifier reporting requirement targets speakers in a way that suggests the restrictions are "a proxy for content regulation." *Harris,* 772 F.3d at 576. For those reasons, we conclude the Iowa statute is subject to no

more than intermediate scrutiny. *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642, 114 S. Ct. 2445, 2459 (1994).

"In order to survive intermediate scrutiny, a law must be 'narrowly tailored to serve a significant governmental interest.'" *Packingham*, 582 U.S. at ___, 137 S. Ct. at 1736 (quoting *McCullen v. Coakley*, 573 U.S. 464, 486, 134 S. Ct. 2518, 2534 (2014)). "To satisfy [intermediate scrutiny], a regulation need not be the least speech-restrictive means of advancing the Government's interests." *Turner Broad. Sys., Inc.*, 512 U.S. at 662, 114 S. Ct. at 2469. We must consider whether "the means chosen . . . 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799, 109 S. Ct. 2746, 2758 (1989)).

The United States Supreme Court has recognized that states "may pass valid laws to protect children" and other victims "from abuse." *Packingham*, 582 U.S. at ___, 137 S. Ct. at 1736 (quoting *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245, 122 S. Ct. 1389, 1399 (2002)). It is well-settled that protecting the public from sex offenders is a significant governmental interest. We conclude Iowa's Internet identifier reporting requirement is narrowly tailored to serve this goal.

Aschbrenner argues that the "Internet identifiers" definition in the Iowa Code is ambiguous, the reporting requirement applies to all offenders regardless of whether their offense involved the Internet, and the sheriff is able to give out information regarding whether an offender has reported a specific Internet identifier, which he argues has a chilling effect on expression. Aschbrenner contends the statute encompasses email accounts, online banking accounts, blogging accounts, newspaper account logins, accounts for online video and music streaming services,

social media accounts, Apple ID, and all online shopping accounts. But Aschbrenner reads the definition of "Internet identifier" too broadly.

By contrast, the State offers a plain language, commonsense interpretation of the statutory definition. The State's proposed construction would limit Internet identifiers to the accounts used to send messages, posts, and other *user-generated* communications or postings that implicate the public safety concerns at issue with the sex offender registry. Under the State's interpretation, an account used only to order and pay for goods would not have to be disclosed. We agree and adopt that interpretation.

In our view, the State's interpretation fits like a glove with the applicable canons of construction for the sex offender registry statute. In *Maxwell*, we described our approach to interpreting Iowa Code chapter 692A. 903 N.W.2d at 182–83. "We construe the statute 'in light of the legislative purpose.'" *Id.* at 182 (quoting *In re A.J.M.*, 847 N.W.2d 601, 605 (Iowa 2014)). "[T]he purpose of the registry is protection of the health and safety of individuals, and particularly children, from individuals who, by virtue of probation, parole, or other release, have been given access to members of the public." *Id.* at 182–83 (quoting *Iowa Dist. Ct.*, 843 N.W.2d at 81). If an offender violates the registration statute, the state can impose criminal liability. *Id.* at 183. Accordingly, "[w]e strictly construe the penal provisions of chapter 692A, requiring fair warning of the conduct prohibited, with doubt resolved in favor of the accused." *Id.*

The State's narrower interpretation we adopt accomplishes these goals. Reporting requirements are limited to Internet identifiers used for *outgoing* communications or postings sent by the offender, consistent with the statute's purpose to guard against anonymous trolling for

victims. This bright-line rule avoids the vagueness and overbreadth issues Aschbrenner's interpretation raises, which would sweep in accounts harmlessly used for the passive receipt of entertainment and information. *See Doe v. Marshall*, No. 2:15-CV-606-WKW, 2018 WL 1321034, at \*16–18 (M.D. Ala. Mar. 14, 2018) (applying strict scrutiny to strike down broader Internet disclosure requirement under First Amendment).

Aschbrenner's unrealistically broad interpretation runs afoul of other applicable canons of instruction. "We have long recognized that statutes should not be interpreted in a manner that leads to absurd results." *Iowa Ins. Inst. v. Core Grp. of Iowa Ass'n for Justice*, 867 N.W.2d 58, 75 (Iowa 2015); *see also* Iowa Code § 4.4(3) ("In enacting a statute, . . . [a] just and reasonable result is intended."); *id.* § 4.6(5) (noting that if a statute is ambiguous, the court should consider, among other things, "[t]he consequences of a particular construction").

Moreover, the narrower interpretation we adopt today avoids constitutional infirmities. "Where a state 'statute "can be made constitutionally definite by a reasonable construction, . . . this Court is under a duty to give the statute that construction." ' " *State v. Nail*, 743 N.W.2d 535, 540 (Iowa 2007) (quoting *State v. Williams*, 238 N.W.2d 302, 306 (Iowa 1976)(en banc)). Put another way,

> When possible, statutory provisions should be construed in such a way as to avoid unconstitutionality rather than simply void them on the basis of an interpretation which renders them constitutionally infirm. If the law is reasonably open to two constructions, one that renders it unconstitutional and one that does not, the court must adopt the interpretation that upholds the law's constitutionality. It would also be preferable to construe the statute to support constitutionality rather than to rewrite or try to improve the statute in some other way.

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Visser*, 629 N.W.2d 376, 380 (Iowa 2001) (en banc) (quoting 2A Norman J. Singer, *Statutes and Statutory Construction* § 45.11, at 70–71 (2000 rev.)).

The Iowa statute is less onerous than those found unconstitutional in other jurisdictions. Iowa's Internet identifier reporting requirement does not prohibit Aschbrenner from using social media websites, nor is he prohibited from using the Internet. *Contra Doe v. Prosecutor, Marion Cty., Ind.*, 705 F.3d 694, 703 (7th Cir. 2013) (invalidating state statute that prevented sex offenders from, among other things, accessing social media sites); *Doe v. Kentucky ex rel. Tilley*, 283 F. Supp. 3d 608, 611–16 (E.D. Ky. 2017) (same). Nor is Aschbrenner required to provide the sheriff with any passwords associated with his Internet identifiers. *See White v. Baker*, 696 F. Supp. 2d 1289, 1312 (N.D. Ga. 2010) (concluding sex offender was likely to prevail on his claim that the state sex offender registration statute requiring offenders to provide law enforcement with Internet passwords violated his right to free speech). Iowa's Internet identifier reporting requirement also gives offenders five business days to report changes, and the DPS allows offenders to report changes in person, by phone, or email. *See Harris*, 772 F.3d at 581–83 (concluding that a reporting statute that required written notice of Internet identifiers within twenty-four hours was "onerous and overbroad"); *Doe v. Snyder*, 101 F. Supp. 3d 672, 704 (E.D. Mich. 2015) (holding that a statute's requirement that an offender report Internet identifiers in person within three business days "imposes a substantially greater, and apparently unnecessary, burden on protected First Amendment speech").

Further, to obtain an offender's Internet identifier, a member of the public must make a specific request for records linked to a particular Internet identifier. Iowa Code § 692A.121(9). Under Iowa's statutory

scheme, an Internet identifier would only be disclosed if a member of the public asked about a specific Internet identifier and whether it is linked to a sex offender. The sheriff's department is permitted "to verify if a particular internet identifier . . . is one that has been included in a registration by a sex offender." *Id.*; *cf. Harris*, 772 F.3d at 580 (noting that the statute at issue allowed law enforcement to disclose information about sex offenders to the public "by whatever means the entity deems appropriate, *when necessary to ensure the public safety*" (alteration in original) (quoting Cal. Penal Code § 290.45(a)(1) (West 2014))).

The Internet identifier-reporting requirement minimizes any chilling effect on Aschbrenner's ability to speak anonymously. The statute is content neutral without prohibiting speech and allows Aschbrenner to report an Internet identifier after it has been created. In *Shurtleff*, the United States Court of Appeals for the Tenth Circuit noted that disclosing an Internet identifier "would generally occur, if at all, at some time period following [the offender's] speech and not at the moment he wished to be heard." 628 F.3d at 1225. "Speech is chilled when an individual whose speech relies on anonymity is forced to reveal his identity as a pre-condition to expression." *Id.* (quoting *Peterson v. Nat'l Telecomm. & Info. Admin.*, 478 F.3d 626, 632 (4th Cir. 2007)). Aschbrenner has not shown that Iowa Code chapter 692A unconstitutionally burdens his right to speak anonymously.

We conclude the Internet identifier-reporting requirement of Iowa Code section 692A.104(1) is narrowly tailored to serve a significant governmental interest. For that reason, we reject Aschbrenner's challenges under the First Amendment and article I, section 7 of the Iowa Constitution.

**IV.  Disposition.**

For these reasons, we affirm the district court judgment.

**AFFIRMED.**

All justices concur except Wiggins and Appel, JJ., who dissent.

**WIGGINS, Justice (dissenting).**

I feel compelled to write on the ex post facto issue. Normally, I would concur in the majority decision because we decided in *State v. Seering* that requiring a person to register on the sex offender registry is not punitive and, thus, the Ex Post Facto Clauses of the Iowa and Federal Constitutions have no applicability to an ex post facto challenge. 701 N.W.2d 655, 669 (Iowa 2005), *superseded by statute on other grounds*, 2009 Iowa Acts ch. 119, § 3 (codified at Iowa Code § 692A.103 (Supp. 2009)), *as recognized in In re T.H.*, 913 N.W.2d 578, 587–88 (Iowa 2018). Stare decisis is a venerable doctrine lending stability to the law. *Kiesau v. Bantz*, 686 N.W.2d 164, 173 (Iowa 2004), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016). However, stare decisis does not prevent us from reconsidering our past judicial decisions when error is manifest. *Id.* Moreover, we should not deprive a litigant of a legal right or defense if our past decision is clearly erroneous. *Id.* I would find our prior decision in *Seering* clearly erroneous for two reasons.

First, our decision in *In re T.H.* held that sex offender registration requirements for juvenile offenders are punitive. 913 N.W.2d at 596. As the dissenters in *In re T.H.* pointed out, one of whom is the writer of the majority decision in this case, there are "no cases supporting a constitutional distinction between registration of adult sex offenders and registration of juvenile sex offenders." *Id.* at 607 (Mansfield, J., concurring in part and dissenting in part). I agree with that statement, and if the registration requirements for juvenile sex offenders are punitive, the registration requirements for adult sex offenders are just as punitive. It is disingenuous to decide otherwise.

Second, since our decision in *Seering*, many courts have examined this issue and have found the registration requirements for adult sex offenders are punitive. *See, e.g., Doe v. State*, 189 P.3d 999, 1017–18 (Alaska 2008); *Hevner v. State*, 919 N.E.2d 109, 112–13 (Ind. 2010); *State v. Letalien*, 985 A.2d 4, 26 (Me. 2009); *Doe v. Dep't of Pub. Safety & Corr. Servs.*, 62 A.3d 123, 140 (Md. 2013); *State v. Simnick*, 779 N.W.2d 335, 342 (Neb. 2010); *Starkey v. Okla. Dep't of Corr.*, 305 P.3d 1004, 1030 (Okla. 2013); *Commonwealth v. Muniz*, 164 A.3d 1189, 1218, 1223 (Pa. 2017) (plurality opinion), *cert. denied*, 138 S. Ct. 925, 925 (2018). Therefore, the reasons set forth in my separate opinion in *Seering* are as applicable today as they were when I wrote them. *See* 701 N.W.2d at 671—72 (Wiggins, J., concurring in part and dissenting in part).

Accordingly, I would find the registration requirements for adult sex offenders are punitive and violate the Ex Post Facto Clauses of the Iowa and Federal Constitutions as applied to Lloyd Aschbrenner.

Appel, J., joins this dissent.