# IN THE SUPREME COURT OF IOWA

No. 21–0079

Submitted September 14, 2022—Filed December 29, 2022

**STATE OF IOWA,**

Appellee,

vs.

**CAMERON JAMES HESS,**

Appellant.

Appeal from the Iowa District Court for Polk County, Sarah E. Crane, Judge.

Defendant prosecuted in district court for felony sex offenses committed as a juvenile appeals his sex offender registration requirement and special sentence imposed after he reached adulthood. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Waterman, J., delivered the opinion of the court, in which Christensen, C.J., and Mansfield and McDermott, JJ., joined. McDonald, J., filed an opinion concurring in part and dissenting in part, in which Oxley and May, JJ., joined.

Martha J. Lucey, State Appellate Defender, and Josh Irwin (argued), Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven (argued), Assistant Attorney General, for appellee.

**WATERMAN, Justice.**

In this appeal, a defendant—who at age seventeen confessed to sexually abusing three children—was prosecuted in district court, convicted on four class "B" felony counts, and sentenced at age twenty. The district court suspended his sentence of incarceration and placed him on probation without suspending his lifetime special sentence under Iowa Code section 903B.1 or his sex offender registration requirement under chapter 692B. The defendant argued in district court that the sex offender registration requirement was unconstitutional under *In re T.H.*, which held that imposing the requirement on a minor in juvenile court proceedings constitutes punishment. 913 N.W.2d 578, 596 (Iowa 2018). The sentencing court ruled that *In re T.H.* does not apply to a defendant in "adult court" who is sentenced while an adult for offenses committed as a juvenile and instead followed *State v. Aschbrenner*, 926 N.W.2d 240, 249 (Iowa 2019), which held that the registration requirement imposed on an adult is nonpunitive.

The defendant appealed, renewing his constitutional challenge to the sex offender registration requirement and further arguing that the district court failed to exercise its discretion under Iowa Code section 901.5(13) to suspend that registration requirement and his lifetime special sentence. The State argues that we should distinguish or overrule *In re T.H.* and that the sex offender registration and special sentence are mandatory. We retained the case to decide these questions.

On our review, we hold that *In re T.H.* applies only to juvenile sex offenders whose cases are prosecuted and resolved in juvenile court, and we decline the defendant's invitation to apply its holding to a juvenile offender prosecuted and convicted in district court. Sex offender registration protects the public regardless of the age of the offender and is properly viewed as nonpunitive for adults as well as juveniles who are prosecuted in district court. As matters of first impression, we hold that the district court lacks discretion under Iowa Code section 901.5(13) to suspend the sex offender registration but does have discretion to suspend the section 903B.1 lifetime special sentence for offenses committed by a juvenile. Because the district court failed to exercise discretion, we remand for resentencing.

## I. Background Facts and Proceedings.

Defendant Cameron James Hess is now twenty-two years old. His parents separated years ago. Hess has several half- and step-siblings. Hess lived with his mother and stepfather and attended high school in Van Meter, but he spent significant time in De Soto with his maternal grandparents and in Des Moines with his father and stepmother. During his time at those households, Hess sexually abused children, including his family members.

Hess began sexually abusing his younger half-sister, A.H., in 2010. Hess abused A.H. through manual fondling and digital penetration of her genitals when she was four years old. In 2011, Hess's parents discovered the abuse and admonished him to stop. By all accounts, Hess stopped abusing A.H.

In 2016, Hess began abusing M.F., a neighbor in Des Moines. Hess forced M.F. to kiss him and forced oral sex on her repeatedly. Hess threatened to hurt her if she told anyone. M.F. was seven years old.

In early 2018, Hess abused C.H., his younger half-sister. Hess subjected C.H. to manual fondling of her genitals and forced oral sex. C.H. was five or six years old.

In May 2018, when M.F. was nine years old and Hess was seventeen, she reported his abuse. Des Moines Police officers investigated and discovered that Hess had also abused A.H. and C.H. Officers referred the three girls for forensic interviews at the Blank Children's STAR Center. Hess confessed to two instances of forced sexual contact with A.H., two with M.F., and two more with C.H.

The State charged Hess with six counts of second-degree sexual abuse, a class "B" felony, in 2018—two counts each arising from Hess's sexual contact with A.H., M.F., and C.H. Iowa Code §§ 709.1(1), .1(3), .3(2) (2017).[1] At that time, Hess was seventeen years old. Although he was a juvenile, Hess's case commenced in district court because he was over age sixteen and was charged with a forcible felony. *Id.* § 232.8(1)(*c*).

Hess filed a motion to transfer his case to juvenile court. The district court denied Hess's "reverse waiver" motion, noting that "[t]he crimes that the Defendant is accused of are severe and pervasive" and that "[t]he sexual abuse

---

[1]According to the trial information, Hess's convictions stem from offenses committed between 2016 and 2018. The substance of the applicable criminal provisions remained unchanged throughout this period. We cite the 2017 version of the Iowa Code for the sake of convenience.

alleged in the six counts cover a time period of eight years . . . [with victims] who were at various times 6, 7, and 10 years of age." The court relied in part on a juvenile court officer's report that Hess, now age eighteen, was "not a good candidate for placement in Juvenile Court" because he "cannot be placed in any juvenile treatment facilities due to his age" and was "eligible for supervision by the Juvenile Court for only 18 months." The court recognized that "the life consequences for the Defendant are severe" and that "[t]he consequences to the public are also severe if the Defendant is not properly deterred, supervised[,] and treated."

Hess waived his right to a jury trial, and the case proceeded to a bench trial on the minutes when Hess was age nineteen. On September 2, 2020, the district court found Hess guilty on four of the six counts.[2] The district court conducted a two-day sentencing hearing by GoTo Meeting in January 2021. Hess was then age twenty. A defense expert, Dr. Luis Rosell, testified about juvenile recidivism and psychology, Hess's history and risk assessment scores, and testing referenced in the presentence investigation report. Dr. Anthony Tatman, director of the Fifth Judicial District Department of Corrections, testified on the same subjects. The court also heard from a victim's stepmother who said, "The

---

[2]The State conceded that the district court lacked jurisdiction over the other two offenses, both involving Hess's abuse of A.H., which were committed before Hess turned fourteen years old; for that reason, the court found Hess not guilty on those counts. *See* Iowa Code § 232.45(6)(*a*); *State v. Duncan*, 841 N.W.2d 604, 611, 614 (Iowa Ct. App. 2013) (relying on *State v. Bruegger*, 773 N.W.2d 862, 885 (Iowa 2009), in holding that a defendant cannot be tried in district court for offenses committed before fourteen years of age). Although Hess was not found guilty of criminal sexual abuse of A.H. due to his age at the time, the minutes of testimony describing that abuse are part of the trial record.

emotional damage that this child has received is beyond anything I can describe to you." She noted that the child has "severe trust issues [and] mental health issues" and that their family is "continuously in counseling and therapy."

Defense counsel requested a deferred judgment and raised constitutional objections to imposing the sex offender registration requirement, relying on *In re T.H.* Defense counsel otherwise never argued that the court had discretion under Iowa Code section 901.5(13) to suspend the sex offender registration or special sentence. The prosecutor argued that the sex offender registration and section 903B.1 special life sentence were mandatory but recommended suspended prison sentences and five-year probation. The court denied Hess's request for deferred judgment and sentenced Hess to concurrent sentences of twenty-five years on each count, suspended the prison sentences, placed Hess on probation for five years, imposed the special sentence of lifetime parole applicable to class "B" felonies under Iowa Code section 903B.1, and required Hess to register as a sex offender under section 692A.103(1). The court gave no indication suggesting that it had discretion to suspend the special sentence or sex offender registration requirement.

Hess appealed, renewing his argument that it is unconstitutional under *In re T.H.* to require sex offender registration for offenses he committed as a juvenile. Hess also argues on appeal that the district court had discretion to suspend the special sentence and sex offender registration requirement and failed to exercise that discretion. The State argues that we should distinguish or overrule *In re T.H.* to reject Hess's constitutional claim and that the special

sentence and sex offender registration are mandatory collateral consequences of his convictions. We retained the case.

**II. Standard of Review.**

"Our standard of review for rulings on constitutional challenges to a sex offender registration statute is de novo." *Aschbrenner*, 926 N.W.2d at 245–46.

> [W]e must remember that statutes are cloaked with a presumption of constitutionality. The challenger bears a heavy burden, because [he] must prove the unconstitutionality beyond a reasonable doubt. Moreover, "the challenger must refute every reasonable basis upon which the statute could be found to be constitutional." Furthermore, if the statute is capable of being construed in more than one manner, one of which is constitutional, we must adopt that construction.

*Id.* at 246 (alterations in original) (quoting *State v. Seering*, 701 N.W.2d 655, 661 (Iowa 2005), *superseded by statute on other grounds*, 2009 Iowa Acts ch. 119, § 3 (codified at Iowa Code § 692A.103 (Supp. 2009)), *as recognized in In re T.H.*, 913 N.W.2d at 587–88)). "[W]e review the district court's ruling on statutory interpretation for correction of errors at law." *Maxwell v. Iowa Dep't of Pub. Safety*, 903 N.W.2d 179, 182 (Iowa 2017).

"A sentencing court's decision to impose a specific sentence that falls within the statutory limits 'is cloaked with a strong presumption in its favor . . . .' " *State v. Wilbourn*, 974 N.W.2d 58, 67 (Iowa 2022) (omission in original) (quoting *State v. Davison*, 973 N.W.2d 276, 289 (Iowa 2022)). "But when the sentencing court fails to exercise discretion because it 'was unaware that it had discretion,' we typically vacate and remand for resentencing." *Id.* (quoting *Davison*, 973 N.W.2d at 289).

### III. Analysis.

Hess raises both constitutional and statutory challenges to his special sentence and sex offender registration requirement. He argues that the district court has discretion under Iowa Code section 901.5(13) to suspend the special sentence and registration requirement. Normally, we would perform the statutory analysis first to avoid the constitutional question if possible. But as this case is postured, the constitutional question must be answered regardless of the district court's statutory discretion (or lack thereof). If the special sentence and sex offender registration requirement are mandatory consequences under the statutory scheme, the constitutional challenge remains. If the court had discretion to suspend the registration or special sentence and failed to exercise its discretion, the remedy is resentencing. *Wilbourn*, 974 N.W.2d at 67. The question then would arise on remand whether the consequences could be imposed constitutionally under *In re T.H.* when Hess was a minor at the time he committed the sex offenses. We elect to address the constitutional claim first.

**A. Is Sex Offender Registration Cruel and Unusual Punishment for Crimes Committed as a Juvenile?** Hess relies on *In re T.H.* for the proposition that requiring a juvenile offender to register as a sex offender is unconstitutional cruel and unusual punishment. In *In re T.H.*, we held that mandatory sex offender registration for a juvenile sex offender prosecuted in juvenile court amounted to punishment but not cruel and unusual punishment for constitutional purposes. 913 N.W.2d at 596–97. In so doing, we drew a line between juvenile offenders and adult offenders, for whom mandatory sex

offender registration remains nonpunitive. *See Aschbrenner*, 926 N.W.2d at 248–49. The State argues that *In re T.H.* does not apply because Hess was prosecuted in district court and reached adulthood before his sentencing. Alternatively, the State urges us to overrule *In re T.H.* as wrongly decided and difficult to administer. We resolve Hess's constitutional claim by distinguishing *In re T.H.*

In *Aschbrenner*, which involved an adult sex offender, we concluded that "*In re T.H.* is readily distinguishable based on the unique concerns of juvenile offenders that are inapplicable to adult offenders." 926 N.W.2d at 248. One factor we used to distinguish adults from juveniles was the publicity of the proceedings: "[A]n adult offender's criminal conviction is already a matter of public record, unlike juvenile adjudications, which are sealed unless the juvenile's case is transferred to adult criminal court." *Id.* Here, Hess was tried in district court, so record of his conviction was never sealed. Hess therefore stands in a position closer to *Aschbrenner* than to *In re T.H.* We decline to apply *In re T.H.* to juvenile sex offenders prosecuted in district court and reject Hess's constitutional challenge to his sex offender registration requirement.[3]

**B. Whether the District Court Has Discretion Under Iowa Code Section 901.5(13) to Suspend the Sex Offender Registration Requirement.** We turn to Hess's statutory claims. He argues that the district court had discretion under Iowa Code section 901.5(13) to suspend the sex offender registration requirement as part of his sentence. The State responds that sex

---

[3]The State asks us to overrule *In re T.H.* We do not reach that issue.

offender registration is a mandatory collateral consequence of his conviction and not a part of his "sentence" that can be suspended under section 901.5(13). This is a question of first impression, but it is easily answered by applying *State v. Richardson*, 890 N.W.2d 609, 619 (Iowa 2017). We begin with the text of the statute:

> 13. Notwithstanding any provision in section 907.3 or any other provision of law prescribing a mandatory minimum sentence for the offense, if the defendant, other than a child being prosecuted as a youthful offender, is guilty of a public offense other than a class "A" felony, and was under the age of eighteen at the time the offense was committed, the court may suspend the sentence in whole or in part, including any mandatory minimum sentence, or with the consent of the defendant, defer judgment or sentence, and place the defendant on probation upon such conditions as the court may require.

Iowa Code § 901.5(13). This provision nowhere mentions sex offender registration or the sex offender registry chapter, Iowa Code chapter 692A. Hess nevertheless contends sex offender registration is part of the "sentence" that can be suspended for juvenile offenders.

We rejected a similar argument in *Richardson*, which addressed the same statute (previously numbered 901.5(14)) to hold that criminal restitution imposed under chapter 910 is not part of the "sentence" that can be suspended. 890 N.W.2d at 619. We noted that section 901.5 does not mention restitution or cross-reference the restitution statute and that restitution "is mandatory, may be imposed later, and operates independently from the section 901.5 sentencing options available to a court." *Id.* at 616, 619. The same is true for sex offender registration under chapter 692A. *See Maxwell*, 903 N.W.2d at 184 (describing the sex offender registration requirement as a mandatory, automatic collateral

consequence of the judgment of conviction). And as we determine today, for juvenile offenses prosecuted in adult court, the sex offender registration requirement is a regulatory measure to protect the public, not punishment. For these reasons, we hold that registration under chapter 692A is not part of the "sentence" that can be suspended under section 901.5(13). We reject Hess's statutory challenge to his sex offender registration requirement and affirm the district court's order requiring registration.

**C**. **Whether the District Court Has Discretion Under Iowa Code Section 901.5(13) to Suspend a Special Sentence Under Section 903B.1.** Hess argues that the district court had discretion under Iowa Code section 901.5(13) to suspend his special sentence of lifetime parole imposed under section 903B.1.[4] We agree. Section 901.5(13) allows the court to suspend a "sentence" including "a mandatory minimum sentence" when the defendant

---

[4]Iowa Code section 903B.1 provides:

A person convicted of a class "C" felony or greater offense under chapter 709, a class "B" felony under section 713.3, subsection 1, paragraph "d", or a class "C" felony under section 728.12, shall also be sentenced, in addition to any other punishment provided by law, to a special sentence committing the person into the custody of the director of the Iowa department of corrections for the rest of the person's life, with eligibility for parole as provided in chapter 906. The board of parole shall determine whether the person should be released on parole or placed in a work release program. The special sentence imposed under this section shall commence upon completion of the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense and the person shall begin the sentence under supervision as if on parole or work release. The person shall be placed on the corrections continuum in chapter 901B, and the terms and conditions of the special sentence, including violations, shall be subject to the same set of procedures set out in chapters 901B, 905, 906, and 908, and rules adopted under those chapters for persons on parole or work release. The revocation of release shall not be for a period greater than two years upon any first revocation, and five years upon any second or subsequent revocation. A special sentence shall be considered a category "A" sentence for purposes of calculating earned time under section 903A.2.

committed an offense under the age of eighteen. Although section 901.5(13) makes no mention of section 903B.1, the immediately preceding subsection does. *See* Iowa Code § 901.5(12) ("In addition to any other sentence or other penalty imposed against the defendant, the court shall impose a special sentence if required under section 903B.1 or 903B.2."). We must decide whether "sentence" in section 901.5(13) includes a "special sentence" imposed under section 903B.1, as referenced in section 901.5(12).

The dissent disregards the juxtaposition of subsections 12 and 13 of section 901.5. We read these related statutes together. *Kolzow v. State*, 813 N.W.2d 731, 736 (Iowa 2012). Textually, a "special sentence" is a subset or type of a "sentence." We find telling the use of the phrase "*any other* sentence" in section 901.5(12). The phrase "any other" becomes surplusage if the special sentence that follows in the next clause is not also a sentence. *See Star Equip., Ltd. v. State*, 843 N.W.2d 446, 455 (Iowa 2014) ("[W]e do not interpret statutes so they contain surplusage." (quoting *Thomas v. Gavin*, 838 N.W.2d 518, 524 (Iowa 2013))). The dissent's view—that a "special sentence" is not a "sentence"— violates the surplusage canon. In our view, a "sentence" that the district court has discretion to suspend in section 901.5(13) includes the section 903B.1 special sentence referenced in section 901.5(12).

Indeed, our state's precedent refers to the chapter 903B special sentences as part of the defendant's sentence. *See, e.g., Doss v. State*, 961 N.W.2d 701, 710 (Iowa 2021) ("Doss's special sentence of lifetime parole is part of his criminal sentence and could subject him to additional imprisonment; therefore, he had

the right to be informed of it before his guilty plea."); *State v. Hallock,* 765 N.W.2d 598, 605 (Iowa Ct. App. 2009) (holding that the chapter 903B special sentence "is a part of Hallock's sentence and is not merely collateral"). A Venn diagram of criminal sentences in the Iowa Code would include within the same circle chapter 903B special sentences as well as sentences of incarceration imposed under chapter 907. A special sentence is indeed a sentence or part of the sentence, and by its terms, section 901.5(13) permits the district court to suspend any sentence in whole or in part when the offense was committed by a juvenile.

The dissent relies on the "shall" language in section 901.5, subsection 12, which mandates the special sentence for sex offenders. Although subsection 12 generally mandates the special sentence for sex offenses, subsection 13 is the more specific provision and controls when the defendant, like Hess, committed offenses when the defendant was under the age of eighteen. *See* Iowa Code § 4.7 (providing that a specific provision controls over a conflicting general provision); *see also Christiansen v. Iowa Bd. of Educ. Exam'rs,* 831 N.W.2d 179, 189 (Iowa 2013) ("[T]he more specific provision controls over the general provision."); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012) [hereinafter Scalia & Garner] (stating that when a specific provision in a statute appears to conflict with a general provision, the specific provision is treated as an exception to the general provision). The dissent is mistaken to find "strong evidence" against the specific–general relationship just because the specific provision did not cross-reference the general. We have repeatedly applied

the canon to hold a more specific statute controlled without any cross-reference to the more general statute.[5] The dissent's interpretation violates this canon, too.

We also note that section 901.5(13) was enacted in 2013, 2013 Iowa Acts ch. 42, § 14 (originally codified at Iowa Code § 901.5(14) (2014), now codified at Iowa Code § 901.5(13) (2017)), after section 901.5(12)'s enactment in 2005, 2005 Iowa Acts ch. 158, § 37 (originally codified at Iowa Code § 901.5(13) (2007), now codified at Iowa Code § 901.5(12) (2017)). To the extent the provisions conflict, the subsequent enactment—section 901.5(13)—controls. *See* Iowa Code § 4.8 ("If statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment by the general assembly prevails."); *Schmett v. State Objections Panel*, 973 N.W.2d 300, 304 (Iowa 2022) (per curiam) ("In the end, we believe we must be guided by the legislature's last word on the subject."); *see also* The Federalist No. 78, at 404 (Alexander Hamilton) (George W. Carey & James McClellan eds., Gideon ed. 2001) ("The rule which has obtained in the courts for determining [conflicting statutes'] relative validity is that the last in order of time shall be preferred to the first."). The dissent's interpretation violates this canon as well.

---

[5]*See, e.g.*, *Des Moines Area Reg'l Transit Auth. v. Young*, 867 N.W.2d 839, 846 (Iowa 2015) (concluding that the more specific statute, which does not cross-reference the more general, controlled over the more general); *In re A.M.*, 856 N.W.2d 365, 372–73 (Iowa 2014) ("[W]e hold the limited exception to the patient-psychotherapist privilege in CINA adjudicatory hearings in section 232.96(5) prevails over the general privilege and confidentiality protections for mental health records codified elsewhere."); *In re Det. of Geltz*, 840 N.W.2d 273, 276–77 (Iowa 2013) (holding that a more specific statute controls over the more general without a cross-reference between the two); *Christiansen*, 831 N.W.2d at 189 (same); *Griffin Pipe Prods. Co. v. Bd. of Rev.*, 789 N.W.2d 769, 775 (Iowa 2010) (concluding that a later paragraph, without a cross-reference, created an exemption from a tax imposed in an earlier paragraph); *McElroy v. State*, 637 N.W.2d 488, 494 (Iowa 2001) (concluding that a more specific rule of civil procedure controls over a more general one without a cross-reference between the two).

The text of section 901.5 provides further support for our interpretation. *Richardson* held that the district court lacked discretion to suspend a juvenile offender's victim restitution under section 901.5, subsection 13 in part because restitution is nowhere mentioned in section 901.5 or its fourteen subsections. 890 N.W.2d at 616; *see also* Iowa Code § 901.5. Chapter 903B special sentences, however, are expressly addressed in subsection 12, immediately preceding subsection 13. *Compare* Iowa Code § 901.5(12), *with id.* § 901.5(13). *Richardson* primarily relied on section 901.5's introductory clause that precedes all of its subsections and limits the statute's scope to matters to be addressed "[a]t the time fixed by the court for pronouncement of judgment and sentence." 890 N.W.2d at 616 (quoting Iowa Code § 901.5). As with sex offender registration requirements, victim restitution may be imposed later. *See id.* at 619. By contrast, special sentences must be imposed and pronounced at sentencing.

The State and dissent argue we should interpret the statutes in context to define "sentence" in section 901.5(13) to mean "only a prison sentence," while the special sentence in section 903B.1 is served "as if on parole." The State, overlooking several statutes discussed below, argues that the Code nowhere allows the court to "suspend parole." But other provisions in section 901.5 include fines among the "sentencing options." *See, e.g.*, Iowa Code § 901.5(3). Nobody argues that the court is without discretion to suspend fines. And that statute specifically refers to the court's power to "sentence the defendant to confinement." *Id.*; *see also id.* § 901.7 (referring to "a sentence of confinement"). If the legislature meant to limit "sentence" in section 901.5(13) to a sentence of

confinement, it presumably would have used that term (or "prison," "jail," or "incarceration"). It did not.

Importantly, section 901.5(13) begins with an introductory phrase that confirms it trumps conflicting statutes imposing a mandatory minimum sentence: "Notwithstanding any provision in section 907.3 or any other provision of law prescribing a mandatory minimum sentence for the offense . . . ." The special sentence in section 903B.1 imposes a mandatory minimum sentence of parole. *See id.* § 903B.1 (incorporating section 906.15(1)'s provisions for discharging special lifetime sentence); *id.* § 906.15(1) (requiring a mandatory minimum period equal to sentence of incarceration before eligibility for discharge from a section 903B.1 special sentence). Relying on dicta in *Richardson,* the dissent argues that a "mandatory minimum sentence" can only be a "sentence of incarceration." But that view is belied by *State v. Graham,* where we recognized that section 906.15 imposes a mandatory minimum period of *parole* before the defendant can be discharged from a section 903B.1 special sentence. 897 N.W.2d 476, 488 (Iowa 2017).[6] We cannot rewrite the statute by adding the

---

[6]In *Richardson,* we gave multiple reasons to conclude that "sentence" in section 901.5(13) did not include victim restitution. 890 N.W.2d at 614–19. Along the way, we contrasted victim restitution with various sentences of incarceration and concluded that "a mandatory minimum sentence" in section 907.3 and other Code provisions refers to a "mandatory period of incarceration." *Id.* at 618. *Richardson* did not involve a special sentence or cite section 903B.1, which, as we subsequently concluded in *Graham,* imposes a mandatory minimum period of *parole,* not incarceration. In our view, section 903B.1 is another provision of law imposing a mandatory minimum sentence—of parole—that can be suspended under section 901.5(13). To the extent the dissent reads *Richardson* as concluding that a mandatory minimum sentence can only be one of incarceration, that conclusion is dicta and inaccurate as to section 903B.1

words "of incarceration" that the legislature chose to omit from section 901.5(13).[7]

The "notwithstanding" clause confirms that the district court's discretion to suspend a sentence in section 901.5(13) supersedes the otherwise conflicting mandatory language in sections 901.5(12) and 903B.1. *See, e.g., United States v. Shkreli*, 47 F.4th 65, 72 (2d Cir. 2022) ("The Supreme Court has indicated that 'the use of such a "notwithstanding" clause clearly signals the drafter's intention that the provisions of the "notwithstanding" section override conflicting provisions of any other section.' " (quoting *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993))).

The dissent ignores a practical problem with its interpretation: that some offenders would be left in limbo. Section 901.5(13) allows deferred sentences for juvenile offenders in lieu of a prison sentence. Those offenders in effect never serve a sentence for the underlying sex offense. Yet the section 903B.1 special sentence "commence[s] upon completion of the sentence imposed . . . for the underlying criminal offense." Iowa Code § 903B.1. Under the plain meaning of section 903B.1, the special sentence would *never* commence if the juvenile received a deferred sentence and satisfied its conditions. We are to consider "[t]he consequences of a particular construction." *Id.* § 4.6(5). The dissent's

---

[7]Even if the term "mandatory minimum sentence" is construed to mean only a period of incarceration, the discretion to suspend the "sentence" extends beyond mandatory minimum sentences. Iowa Code § 901.5(13) ("[T]he court may suspend the sentence in whole or in part, including any mandatory minimum sentence . . . ."). As discussed above, the "sentence" may include a special sentence that can be suspended in whole or in part. The discretion to suspend part of the sentence is not limited to a mandatory minimum sentence or period of incarceration.

interpretation violates this canon, among others. By contrast, our interpretation harmonizes the statutes by allowing the sentencing court to suspend the special sentence when it grants a deferred sentence for the underlying offense.

*Richardson* determined that "sentence" as used in section 901.5(13) is ambiguous. 890 N.W.2d at 617–18. "We apply the rule of lenity in criminal cases, but we only do so as a last resort." *State v. Zacarias*, 958 N.W.2d 573, 581 (Iowa 2021); *see also* Scalia & Garner at 197 ("[T]he rule of lenity applies only when a reasonable doubt persists after the traditional canons of interpretation have been considered."). The rule of lenity applies to sentencing statutes. *Bifulco v. United States*, 447 U.S. 381, 387 (1980) ("In past cases the Court has made it clear that [the rule of lenity] applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose."). In our view, the traditional canons and the rule of lenity support our conclusion that "sentence" in section 901.5(13) includes the "special sentence."

We are mindful that the purpose of the special sentence in section 903B.1 is to protect the public from sex offenders. *See State v. Wade*, 757 N.W.2d 618, 628 (Iowa 2008) ("[T]he legislature simply extended Iowa's parole supervision scheme to require additional supervision for sex offenders consistent with the state's objective of protecting citizens from sex crimes."). The plain meaning of the language codified in section 901.5(13) merely allows the court to suspend the special sentence in whole or in part; the district court is not required to do so when considering public safety.

We hold that Iowa Code section 901.5(13) allows the district court to suspend Hess's section 903B.1 special sentence in whole or in part. Because the district court did not exercise its discretion on whether to impose that special sentence, resentencing is required. *Wilbourn*, 974 N.W.2d at 67.

**IV. Disposition.**

For the foregoing reasons, we affirm Hess's sex offender registration requirement. We remand the case for resentencing consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Christensen, C.J., and Mansfield and McDermott, JJ., join this opinion. McDonald, J., files an opinion concurring in part and dissenting in part, in which Oxley and May, JJ., join.

#21–0079, *State vs. Hess.*

**McDONALD, Justice (concurring in part and dissenting in part).**

Sentencing is wholly a creature of statute. "The legislature possesses the inherent power to prescribe punishment for crime, and the sentencing authority of the courts is subject to that power." *State v. Iowa Dist. Ct.*, 308 N.W.2d 27, 30 (Iowa 1981). Pursuant to that inherent authority, the legislature has prescribed mandatory terms of incarceration for certain offenses in Iowa Code section 907.3 and mandatory minimum sentences of incarceration for certain offenses in other provisions of law. In Iowa Code section 901.5(13), the legislature vested the district court with discretion to not impose what would otherwise be a mandatory term of incarceration under section 907.3 or a mandatory minimum sentence of incarceration under any other provision of law for an offender under the age of eighteen not convicted of a class "A" felony. Iowa Code section 901.5(13), properly understood, does not vest the district court with discretion with respect to any other type of sentencing provision, including the sex offender registration requirement under chapter 692A and the special sentence for sex offenders under sections 903B.1, 903B.2, and 901.5(12). I respectfully dissent from the majority's contrary conclusion.

I.

The question presented is: What additional authority does section 901.5(13) give the district court at the time of sentencing? The inquiry begins with the language of the statute at issue. *Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020). Using traditional interpretive tools, we seek to determine the

fair and ordinary meaning of the statutory language at issue. *Id.* In determining the fair and ordinary meaning of the statutory language at issue, the court considers the language's relationship to other provisions of the same statute and other provisions of related statutes. *See* Iowa Code § 4.1(38) (2017); *State v. Doe,* 903 N.W.2d 347, 351 (Iowa 2017).

With respect to offenders under the age of eighteen not convicted of a class "A" felony, section 901.5(13) gives the district court sentencing authority it otherwise would not have. Specifically, the statute gives the district court the discretion to "suspend the sentence in whole or in part, including any mandatory minimum sentence." Iowa Code § 901.5(13). The statute also gives the district court authority to "defer judgment or sentence, and place the defendant on probation upon such conditions as the court may require." *Id.*

The statute does not, however, provide the district court with this additional sentencing authority as an exception to any and all mandatory sentencing provisions. Instead, the statute provides the district court with additional authority "notwithstanding" two particular sentencing provisions: (1) "any provision in section 907.3," and (2) "any other provision of law prescribing a mandatory minimum sentence for the offense." *Id.* To understand the boundaries of the additional authority granted in section 901.5(13), we must first understand the substantive ground in these two particular sentencing provisions to which section 901.5(13) is an exception.

Section 907.3 is entitled "Deferred judgment, deferred sentence, or suspended sentence." As the title suggests, section 907.3 "relates to deferred

judgments, deferred sentences, and suspended sentences." *State v. Richardson*, 890 N.W.2d 609, 617 (Iowa 2017). The section relates to sentences of incarceration and "identifies certain circumstances[,] including forcible felonies[,] where incarceration is mandatory and the deferred and suspended options are not available." *Id.* Section 907.3 has nothing to do with and nothing to say about the sex offender registration requirement under chapter 692A or the special sentence under sections 903B.1, 903B.2, or 901.5(12). Section 901.5(13)'s exception to section 907.3 is thus a grant of additional authority to defer or suspend what would otherwise be a mandatory sentence of incarceration.

Section 901.5(13) grants the district court discretionary authority with respect to "any other provision of law prescribing a mandatory minimum sentence for the offense." Iowa Code § 901.5(13). In *State v. Richardson*, we interpreted the phrase "mandatory minimum sentence" as used in (what is now) section 901.5(13). 890 N.W.2d at 618. We explained the phrase commonly refers to incarceration:

> Notably, *Black's Law Dictionary* defines "sentence" as "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty" or "the punishment imposed on a criminal wrongdoer" **but defines "minimum sentence" as "[t]he least amount of time that a convicted criminal must serve in prison before becoming eligible for parole."** *Sentence, Black's Law Dictionary* (10th ed. 2014); *Minimum Sentence, Black's Law Dictionary*; *see State v. Hoyman*, 863 N.W.2d 1, 11 (Iowa 2015) (citing *Black's Law Dictionary* in interpreting a criminal statute).
>
> **Other provisions of the Iowa Code use "mandatory minimum sentence" to refer to a mandatory period of incarceration.** *See* Iowa Code § 124.413 (section entitled "Mandatory minimum sentence"); *id.* § 232.45(14)(*a*)

(cross-referencing section 124.413); *id.* § 462A.14(3)(*a*) ("mandatory minimum sentence of incarceration"); *id.* § 901.5(7) ("The court shall inform the defendant of the mandatory minimum sentence, if one is applicable."); *id.* § 901.10(2) (allowing reductions in the "mandatory minimum sentence" for certain offenses if the defendant pleads guilty or cooperates in the prosecution of other persons); *id.* § 903A.2(5) (addressing the interaction between earned time accrued by inmates and "any mandatory minimum sentence"); *id.* § 903A.5(1) (addressing the interaction between earned time and certain "mandatory minimum sentence[s]"); *id.* § 904.902 ("An inmate serving a mandatory minimum sentence of one year or more . . . ."); *id.* § 906.5(1)(*a*) (stating that the board of parole does not need to annually review the status of a person "serving a mandatory minimum sentence"); *id.* § 907.3(1)(*a*)(7) ("a mandatory minimum sentence must be served or mandatory minimum fine must be paid"); *id.* § 907.3(2)(*a*)(3) ("a mandatory minimum sentence must be served or mandatory minimum fine must be paid"); *id.* § 907.3(3)(*c*) ("[a] mandatory minimum sentence of incarceration"); *id.* § 907.3(3)(*f*) ("[a] mandatory minimum sentence or fine imposed for a violation of section 462A.14").

*Id.* (alterations and omission in original) (emphases added). The *Richardson* court then concluded that "mandatory minimum sentence" as used in section 901.5(13) refers only to the minimum sentence of "incarceration." *Id.* at 619. Thus, the phrase "any other provision of law prescribing a mandatory minimum sentence for the offense" has nothing to do with and nothing to say about the sex offender registration requirement under chapter 692A or the special sentence under sections 903B.1, 903B.2, or 901.5(12). The exception contained in section 901.5(13) is thus a grant of additional authority to defer or suspend what would otherwise be a mandatory minimum sentence of incarceration.

The conclusion that section 901.5(13) relates only to mandatory sentences of incarceration or mandatory minimum sentences of incarceration is supported by the text of related statutes. *See Griffin Pipe Prods. Co. v. Guarino*, 663 N.W.2d

862, 865 (Iowa 2003) (stating that where statute is ambiguous, we look to other statutes to try to read them as an integrated whole). The related statutes provide that the registration requirement and the special sentence are mandatory in all circumstances and discretionary in none. Iowa Code section 692A.103 provides that a person convicted of a qualifying offense "*shall register* as a sex offender." (Emphasis added.) Iowa code section 903B.1 provides that persons convicted of qualifying class "B" and "C" felonies "*shall*" be sentenced "to a special sentence committing the person into the custody of the director of the Iowa department of corrections for the rest of the person's life." (Emphasis added.) Iowa Code section 903B.2 provides that persons convicted of qualifying class "D" felonies and misdemeanors "*shall*" be sentenced "to a special sentence committing the person into the custody of the director of the Iowa department of corrections for a period of ten years." (Emphasis added.) Iowa Code section 901.5(12) provides that "[a]t the time fixed by the court for pronouncement of judgment and sentence, . . . the court *shall impose* a special sentence if required under section 903B.1 or 903B.2." (Emphasis added.) Repeated use of the word "shall" imposes a duty and denies the existence of discretion. *See* Iowa Code § 4.1(30)(*a*) (defining "shall"); *State v. Klawonn*, 609 N.W.2d 515, 522 (Iowa 2000) (en banc) ("[W]e have interpreted the term 'shall' in a statute to create a mandatory duty, not discretion.").

Given the legislature's unambiguous instruction that the registration requirement and special sentence shall be mandatory in all circumstances, a legislative exception to these mandatory schemes would likely be equally

unambiguous. But that is not the case. As the majority explains, section 901.5(13) "nowhere mentions sex offender registration or the sex offender registry chapter, Iowa Code chapter 692A." Similarly, section 901.5(13) nowhere uses the term "special sentence." Section 901.5(13) does not cross-reference or in any way address chapter 692A or sections 903B.1, 903B.2, or 901.5(12).

Generally, linked statutes cross-reference each other. *See Serv. Emps. Int'l Union, Loc. 199 v. Iowa Bd. of Regents*, 928 N.W.2d 69, 77 (Iowa 2019) (noting that "[t]he statutes are linked by the cross-reference" in another statute). "The legislature knows how to cross-reference" related statutes. *Des Moines Flying Serv., Inc. v. Aerial Servs. Inc.*, 880 N.W.2d 212, 221 (Iowa 2016). If the legislature intended to grant the district court additional sentencing authority with respect to the sex offender registry or the special sentence, it would have cross-referenced chapter 692A and sections 903B.1, 903B.2, and 901.5(12); just as it did with section 907.3 and other provisions of law regarding mandatory minimum sentences. The fact that the "legislature did not cross-reference either statute to the other" is strong evidence that the statutes operate wholly independently of each other. *Des Moines Flying Serv., Inc.*, 880 N.W.2d at 221; *see State v. Sluyter*, 763 N.W.2d 575, 584 (Iowa 2009) (divining legislative intent, in part, from lack of cross-reference to another statute).

In sum, the text of the relevant statutes can be harmonized into a coherent whole. The legislature passed a comprehensive scheme to require the registration of sex offenders commencing upon the date they are no longer incarcerated and the mandatory monitoring of those convicted of certain qualifying offenses after

they have discharged their respective sentences for the underlying offense. This scheme is set forth in chapter 692A and in sections 903B.1, 903B.2, and 901.5(12). In 2013, the legislature passed section 901.5(13) to afford the sentencing court some discretion in sentencing offenders under the age of eighteen. *See* 2013 Iowa Acts ch. 42, § 14 (originally codified at Iowa Code § 901.5(14) (2014), now codified at Iowa Code § 901.5(13) (2017)). That discretion exists only with respect to what would otherwise be mandatory sentences or mandatory minimum sentences of incarceration. This is evident from the "notwithstanding" language in section 901.5(13) and the specific cross-references to section 907.3 and other provisions of law relating to mandatory minimum sentences. This is also evident from the lack of any cross-references in section 901.5(13) to chapter 692A or sections 903B.1, 903B.2, or 901.5(12). One would expect the legislature, if it intended to pass a significant exception to its mandatory registration and supervision regime for sex offenders, to at least cross-reference the statutes it deemed implicated by the grant of discretionary authority. The fact that the legislature did not do so speaks volumes about the intended scope of section 901.5(13).

## II.

With that understanding, I circle back to the majority's discussion of the registration requirement and the special sentence to highlight points of disagreement on the question of statutory construction. I address the majority's application of section 901.5(13) to both the registration requirement and the special sentence.

A.

I agree with the majority that section 901.5(13) does not afford the district court discretion with respect to the sex offender registration requirements set forth in chapter 692A. As part of its rationale, the majority explains section 901.5(13) "nowhere mentions sex offender registration or the sex offender registry chapter, Iowa Code chapter 692A." I agree with this rationale, and the majority should stop there.

But the majority does not stop there. As further justification for its decision, the majority turns its focus to the meaning of the word "sentence" as used in section 901.5(13). In the majority's view, the sex offender registration requirement is not part of the defendant's "sentence" because the registration requirement is not punitive. Thus, in the majority's view, the nonpunitive registration requirement is not part of the "sentence" that can be suspended under section 901.5(13). I disagree with this rationale. This part of the majority opinion conflates two separate and distinct concepts—punishment and sentence—and is directly contrary to controlling precedents.

The majority contends that anything that is not punishment is not part of a sentence. This contention is contrary to basic sentencing law. The statutory purpose of sentencing is to "provide maximum opportunity for the rehabilitation of the defendant, and for the protection of the community from further offenses by the defendant and others." Iowa Code § 901.5. Sentences thus frequently contain many nonpunitive items. Any item addressed at sentencing and contained in the sentencing order is part of the defendant's sentence even when

the item is not punitive in nature. *See State v. Letscher,* 888 N.W.2d 880, 883 (Iowa 2016) (stating that any "provision of a sentence becomes part of the sentence"). A bond forfeiture order is part of the defendant's sentence. *See id.* ("In this case, however, the district court made forfeiture of the pretrial appearance bond posted by Letscher into a term of the sentencing order. As a term of sentence, Letscher was entitled to challenge it as any other term of sentence."). An order to repay court costs is part of the defendant's sentence. *See State v. McMurry,* 925 N.W.2d 592, 596 (Iowa 2019). An order to complete sex offender treatment is part of the defendant's sentence. *See State v. Valin,* 724 N.W.2d 440, 449 (Iowa 2006). A no-contact order is part of the defendant's sentence. *See State v. Sanchez,* No. 13–1989, 2015 WL 4935530, at *5 (Iowa Ct. App. Aug. 19, 2015). A ten-dollar domestic violence fee is part of the defendant's sentence. *See State v. Robinson,* 841 N.W.2d 615, 617 (Iowa Ct. App. 2013). An order to provide a DNA sample is part of the defendant's sentence. *See State v. Sandoval,* No. 12–0018, 2012 WL 4101795, at *1 (Iowa Ct. App. Sept. 19, 2012). There is no shortage of nonpunitive items that could be part of a defendant's sentence.

Not only is the majority's rationale contrary to basic sentencing law, but it is also directly contrary to controlling precedents stating that an order to be placed on the sex offender registry is part of the defendant's sentence. *See, e.g., State v. Goodson,* 958 N.W.2d 791, 806 (Iowa 2021) ("Goodson argues that the district court entered an illegal sentence because the sentence specified a duration for his sex offender registration. . . . The State agrees that the district

court's sentence is illegal and must be corrected. As a result, we reverse the illegal portion of Goodson's sentence."); *State v. Zacarias*, 958 N.W.2d 573, 579 (Iowa 2021) ("Zacarias was also required to register as a sex offender as part of his sentence."); *State v. Chapman*, 944 N.W.2d 864, 870–71 (Iowa 2020) ("Chapman agrees his appeal involves a challenge to that part of his sentence requiring him to register as a sex offender."); *State v. Petty*, 925 N.W.2d 190, 194 (Iowa 2019) ("As part of the sentence, Petty was ordered to register with the sex offender registry for life."); *State v. Graham*, 897 N.W.2d 476, 478 (Iowa 2017) (allowing challenge to sex offender registration requirement on illegal sentence grounds).

For these reasons, I join the majority in holding that section 901.5(13) does not afford the district court discretion with respect to the sex offender registration requirement under chapter 692A. I cannot, however, join the majority's full rationale in support of its holding.

## B.

Although the majority correctly holds that section 901.5(13) does not grant the district court authority to suspend the sex offender registration requirement, it also erroneously holds that section 901.5(13) does grant the district court authority to suspend the special sentence. The difference in the majority's treatment of the registration requirement and the special sentence is inconsistent, contrary to the purposes of all the relevant statutes, and foreclosed by controlling authority.

The majority's conclusion is inconsistent. Why would section 901.5(13) not apply to the registration requirement but apply to the special sentence? The registration requirement and the special sentence work in tandem to provide a continuous process of registration and monitoring of sex offenders. For example, the duration of the registration requirement is determined by the duration of the special sentence. *See* Iowa Code § 692A.106(2), (4). By way of another example, a sex offender on the registry and also placed on a special sentence may be subject to electronic monitoring. *See id.* § 692A.124. Because these statutory regimes work in tandem, section 901.5(13) should apply to neither or both. It seems clear to me that section 901.5(13) applies to neither. Perhaps a decent argument could be made it applies to both.

The majority rejects both of these logically consistent outcomes and instead splits the difference by concluding that section 901.5(13) applies to one but not the other. It is odd to conclude that the legislature intended the grant of additional authority in section 901.5(13) to apply to one and not the other given that the legislature crafted these statutory regimes to work together. It is even more odd to conclude that the special sentence—the sentence designed to provide extended supervision for the most heinous sex offenders like Hess—is the sentence the legislature intended the sentencing court to have discretion in imposing.

The majority justifies this illogical distinction based on its interpretation of the word "sentence." In the majority's view, section 901.5(13) grants the district court the authority to "suspend the sentence." In the majority's view,

because the sex offender registration requirement is not punishment, it is not a "sentence" within the meaning of the statute. As discussed above, this rationale is incorrect. It is contrary to basic sentencing law and contrary to controlling precedents. *See Goodson,* 958 N.W.2d at 806; *Zacarias,* 958 N.W.2d at 579; *Chapman,* 944 N.W.2d at 870–71; *Petty,* 925 N.W.2d at 194; *Graham,* 897 N.W.2d at 478. The majority ignores this and continues on by reasoning that because the special sentence is a type of sentence, section 901.5(13) grants the district court the authority to suspend the special sentence.

I respectfully disagree with the majority's reasoning. There is no doubt that section 901.5(13) grants the district court discretion with respect to the imposition of *certain types* of "sentences" on offenders under the age of eighteen. There is also no doubt that section 901.5(13) does not grant the district court discretion with respect to the imposition of *any type* of sentence on offenders under the age of eighteen. For example, in *Richardson,* we held that section 901.5(13) does not give the district court discretion to suspend mandatory restitution under section 910.3B, which is punitive and part of the defendant's sentence. *See* 890 N.W.2d at 619. And today the majority holds that section 901.5(13) does not give the district court the authority to suspend the sex offender registration requirement even though controlling precedents deem registration a sentence when part of the sentencing order.

The relevant question is thus not whether the special sentence is *a type* of sentence. The relevant question is whether the special sentence is *the type* of

sentence encompassed in the grant of discretion afforded in section 901.5(13). By asking the wrong question, the majority gets the wrong answer.

As discussed in part I, the relevant question is what additional authority section 901.5(13) gives the district court at the time of sentencing? By asking the right question, we get the right answer: Section 901.5(13) grants the district court additional discretion only with respect to what would otherwise be mandatory sentences of incarceration or mandatory minimum sentences of incarceration. In addition to the reasons given in part I, this conclusion is supported by additional statutory authority that provides the special sentence is separate and distinct from the types of sentences encompassed within section 901.5(13).

These separate authorities are the very statutory provisions creating the special sentence. Iowa Code section 903B.1 provides that "[t]he special sentence imposed under this section shall commence upon completion of the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense." Iowa Code section 903B.2 also provides that "[t]he special sentence imposed under this section shall commence upon completion of the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense." Sections 903B.1 and 903B.2 contemplate that a sex offender will serve some period of incarceration or supervision prior to commencing the special sentence. In other words, there is a separate sentence of incarceration or probation that precedes the special sentence and is distinct from the special sentence.

This conclusion is also supported by the fact that the relevant statutes provide that the special sentence is *in addition to* any other punishments. Both Iowa Code sections 903B.1 and 903B.2 provide that the special sentence is "in addition to any other punishment provided by law." And Iowa Code section 901.5(12) provides that the "special sentence" is "[i]n addition to any sentence or other penalty imposed against the defendant." The phrase "in addition to" denotes the "special sentence" is separate and distinct from "the sentence" of incarceration referred to in section 901.5(13). *See Faheem–El v. Klincar*, 527 N.E.2d 307, 310 (Ill. 1988) (stating that the "legislature's use of the phrase 'in addition to' dictates that" a "mandatory parole term" is "separate" from the sentence of imprisonment). The majority's construction renders the words "in addition to" as used in section 901.5(12) wholly superfluous. "As a general rule of statutory construction, we avoid an interpretation or application of a statute that renders other portions of the statute superfluous or meaningless." *Little v. Davis*, 974 N.W.2d 70, 75 (Iowa 2022).

The majority tries to avoid these significant problems with its construction of section 901.5(13) by taking a fallback position: the special sentence for sex offenders is encompassed within the phrase "mandatory minimum sentence for the offense" as used in section 901.5(13). I disagree for three reasons.

First, the majority's interpretation of the term "mandatory minimum sentence" is implausible. The task of statutory interpretation is to determine the ordinary meaning of the statutory language at issue. *See Doe*, 943 N.W.2d at 610. The majority's interpretation does not do that. To anyone who has practiced

criminal law, the majority's interpretation is an inordinary interpretation of the phrase "mandatory minimum sentence."

Second, the majority's fallback position is foreclosed by *Richardson*. As discussed in part I, in *Richardson* this court looked exhaustively at how the term "mandatory minimum sentence" was used throughout the Code. 890 N.W.2d at 618. Based on that exhaustive analysis, we concluded that the phrase "mandatory minimum sentence" as used in section 901.5(13) refers only to the mandatory minimum sentence of "incarceration." *Id.* The majority's interpretation of "mandatory minimum sentence" as covering something other than a mandatory minimum term of incarceration is the interpretation of the dissenters in *Richardson*. *Id.* at 630–32 (Appel, J., dissenting). The term "mandatory minimum sentence" has nothing to do with the special sentence mandated by sections 903B.1, 903B.2, and 901.5(12).

Third, the majority's approach is inconsistent with the purpose of statutory interpretation and construction. In interpreting and construing statutes, courts should seek to harmonize statutes to effectuate the legislature's purpose as evidenced in the text of the statute, but the majority seeks to do the opposite. The majority goes out of its way to interfere with the statutory scheme: it misstates basic sentencing law, it ignores controlling authority, and it twists our precedents to create conflict where no conflict exists. For example, the majority repeatedly states that the more specific provision controls over the general, but that canon, and the related canons on which the majority rely, applies only where there is an actual conflict between statutes. *See State v.*

*Lutgen*, 606 N.W.2d 312, 314 (Iowa 2000) (en banc) ("If a court can reasonably harmonize two statutes dealing with the same subject, it must give concurrent effect to both, even though one is specific, or special, and the other general." (quoting 82 C.J.S. Statutes § 355, at 474–75 (1999))). As shown above, there is no actual conflict between statutes here: sections 903B.1, 903B.2, and 901.5(12) require the imposition of the special sentence, and section 901.5(13) is simply silent on the issue. It is unclear to me why the majority goes out of its way to put a stick in the legislature's spokes.

III.

In addition to these interpretive and doctrinal issues, the majority's interpretation is at odds with the purpose of the special sentencing regime. "[S]ex offenders present a special problem and danger to society." *State v. Wade*, 757 N.W.2d 618, 626 (Iowa 2008). This is true with respect to juvenile sex offenders as well. In 2005, recognizing this risk, the general assembly created a special sentence for certain high-risk sex offenders. *See* 2005 Iowa Acts ch. 158, §§ 39, 40 (codified at Iowa Code §§ 903B.1, .2 (2007)). The special sentence mandates extended monitoring of high-risk sex offenders in the community after the "completion of the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense." Iowa Code §§ 903B.1, .2. The purpose of the special sentence is to protect the public by allowing continued monitoring of certain sex offenders.

To advance this important public-safety purpose, the general assembly declined to vest the sentencing court with discretion to determine *ex ante*

whether a sex offender should be subject to the special sentence. Instead, the general assembly made the special sentence mandatory at the time of sentencing and vested the board of parole with the discretion to determine *ex post* when a sex offender no longer presents a risk and should be discharged from the special sentence. *See* Iowa Code § 901.5(12); *id.* §§ 903B.1, .2; *id.* § 906.15.

Thus, while the district court is required to pronounce and impose the special sentence at the time of sentencing, the special sentence is separate and distinct from the sentence of incarceration and serves a different purpose. The special sentence is an "exten[sion of] Iowa's parole supervision scheme [that] require[s] additional supervision for sex offenders consistent with the state's objective of protecting citizens from sex crimes." *Wade*, 757 N.W.2d at 628. The special sentence does "not involve sentencing functions." *Id.* As Justices Mansfield and Waterman recently explained, the special sentence must be treated "as a form of parole, which is exactly what the legislature has said it is." *In re Det. of Wygle*, 910 N.W.2d 599, 620 (Iowa 2018) (Mansfield, J., dissenting, joined by Waterman and Zager, JJ.).

Administration of the special sentence is textually committed to the discretion of the other branches of government. Iowa Code sections 903B.1 and 903B.2 provide that the special sentence commits "the person into the custody of the director of the Iowa department of corrections" for the specified time period "with eligibility for parole as provided in chapter 906." Chapter 906 governs parole and work releases. Sections 903B.1 and 903B.2 further provide that it is the "board of parole," and not the district court, that "shall determine whether

the person should be released on parole or placed in a work release program." Both sections further provide that the terms and conditions of the special sentence shall be governed by rules adopted "for persons on parole or work release." Any violations of the terms and conditions of the special sentence are determined by an administrative law judge and not a court. *See* Iowa Code § 908.6. Finally, the Code provides that the board of parole shall determine when an offender is discharged from the special sentence. *See id.* § 906.15. Other than requiring its imposition at the time of sentencing, no statutory provision allows the judicial branch to be involved in any way with the parole sentence.

The majority ignores this and now interjects itself into and interferes with the board of parole's administration of the special sentence. This impedes the public-safety purpose of the statute. The legislature has determined that sex offender risk assessments should be made with as much information as possible. To advance that policy, the legislature has determined that the sentencing court must impose the special sentence at the time of sentencing without making an *ex ante* determination of the sex offender's risk to the public. After more time has passed and the sex offender has discharged the sentence for the underlying offense, the sex offender then commences the special sentence. At that time, the board of parole can begin extended monitoring of the offender and can make an *ex post* determination of risk based on the most recent information regarding the offender.

To illustrate the problem, just consider the facts of this case. The district court ordered the defendant to serve four concurrent terms of incarceration not

to exceed twenty-five years each, suspended those sentences, and placed the defendant on probation for five years. The district court then imposed the special sentence as required by section 903B.1. Under the district court's sentence, the defendant is under the district court's supervision for the five years of probation and then under the supervision of the Iowa department of corrections until such time as the board of parole determines the defendant no longer poses a risk to the public and should thus be discharged from the special sentence. The board of parole's information would be based on the most recent and relevant information regarding the risk posed.

Under the majority's remand order, however, the district court is now supposed to make a speculative determination on whether the defendant should be subject to the special sentence when he discharges probation five years from the date of sentencing. The majority's decision pulls the risk assessment forward and forces the district court to make the assessment based on speculation about the defendant's risk profile five years in the future.

Consider a different hypothetical. What if the district court had not suspended Hess's sentences of incarceration? In that scenario, Hess would have been sentenced to an indeterminate term of incarceration not to exceed twenty-five years. What sense does it make to ask the sentencing court to exercise its discretion at the time of sentencing? Can the district court make a nonspeculative determination on whether Hess should serve a special sentence that does not commence until he is released from prison perhaps twenty-five years in the future? No, which is presumably why the legislature did not grant

the district court the discretion to make the speculative determination the majority now orders. Instead, the statute requires the district court to impose the special sentence and allows the board of parole to look at more relevant information after the "completion of the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense." Iowa Code § 903B.1.[8]

## IV.

Because of the high risk to reoffend, the legislature has concluded that sex offenders like Hess must serve a "special sentence" of parole that is separate from and "in addition to" the defendant's sentence and "commence[s] upon completion of the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense." Iowa Code § 903B.1. The legislature concluded that this mandatory extension of "Iowa's parole supervision scheme" was necessary to advance "the state's objective of protecting citizens from sex crimes." *Wade*, 757 N.W.2d at 628. Under this scheme, "[t]he parole board, an executive agency, is vested with the authority to" implement and supervise the special sentence. *Id.* The majority has undermined the scheme and usurped the board of parole's role with respect to the special sentence of

---

[8]The majority raises a concern regarding the application of the statute to deferred-sentence cases. Section 903B.1 applies only where there has been a conviction for the underlying offense, so perhaps the failure to enter judgment or sentence may never trigger the special sentence. But there may also be a ready response to the majority's concern. That response is not necessary here because the issue is not before us. The question presented in this appeal is whether the district court can suspend the special sentence after imposing judgment and sentence for the underlying offense and thereby trigger the special sentence under section 903B.1.

parole. This is contrary to the text of the statute and relevant precedents and is wholly unnecessary. I respectfully dissent.

Oxley and May, JJ., join this concurrence in part and dissent in part.